EDWARD L. McCARTY, PROSECUTOR, v. BOULEVARD COMMISSIONERS OF THE COUNTY OF HUDSON ET AL., RESPONDENTS.

Argued November 7, 1917—Decided January 25, 1918.

1. A power in the statute (*Pamph. L.* 1908, *p.* 107, § 1; *Comp. Stat., p.* 4531, ¶ 279), authorizing the boulevard commissioners of Hudson county "to reinforce, relay, reconstruct or rebuild any portion of the roadway paving, the curb and gutters," &c., of the Hudson boulevard, is sufficient for the board to provide for "parkway islands."

2. Under the above statute (*Pamph. L.* 1908, *p.* 108, § 2) if the boulevard commissioners submit to the board of chosen freeholders of the county, being the board vested by law with the control of the finances of the county, a full statement of the work necessary and proposed to be executed at that time, with the estimated cost of such work, and a requisition for the amount of such cost, after the bids for the work are received but before the contract is let and the prosecution of the work is commenced, it is sufficient.

McCarty v. Boulevard Com'rs of Hudson Co.     *91 N. J. L.*

3. The action of the Hudson boulevard commissioners for work necessary to be done in the interest of the taxpayers will not be set aside, upon *certiorari*, upon a doubtful construction of a statute, in reference to advertisement (*Pamph. L.* 1912, *p.* 593), where the statute has been substantially complied with, at the suit of a prosecutor who has suffered no special injuries of which he can be heard to complain.

4. Under the above statute (*Pamph. L.* 1908, *p.* 107, § 1) the fact that "the curb and gutters" therein provided for are not expressly mentioned in the original resolution, that it is necessary in the opinion of the body vested by law with the care of the road to make repairs, is not fatal, when the cost of such "curb and gutters" is provided for in the advertisement for bids and in the resolution stating the work necessary and proper to be executed, which is sent to the board of freeholders of the county before the award is made.

On *certiorari*.

Before Justices GARRISON, BERGEN and BLACK.

For the prosecutor, *Collins & Corbin*.

For the respondents, *J. Emil Walscheid* and *James J. Murphy*.

The opinion of the court was delivered by

BLACK, J.    The prosecutor in this case seeks to review the legality of two resolutions of the Boulevard Commissioners of the county of Hudson awarding two contracts for the repair and reconstruction of two sections of the Hudson Boulevard in Jersey City, with a bituminous concrete pavement, laid upon a macadam stone foundation.

The date of the resolutions is June 6th, 1917; the amount of the awards are thirty-seven thousand dollars ($37,-000) and one hundred and ten thousand and five hundred and eight dollars and seventy cents ($110,508.70) respectively, made to the lowest bidder in each case. The work under the first award is between Communipaw avenue and the Newark and New York branch of the Central Railroad of New Jersey; the second award is between Communipaw avenue and Newark avenue, Jersey City. The two writs are

considered together, as one, the points involved being identical. The power for making the awards is sought in *Pamph. L.* 1908, *p.* 107, *ch.* 69, § 1; *Comp. Stat., p.* 4531, ¶ 279, which empowers or authorizes the commissioners, "to reinforce, relay, reconstruct, or rebuild any portion of the roadway paving, the curb and gutters, the drainage system, the lighting plant, including the laying of conduits and placing cables therein, &c., to meet the requirements incident to increase of population, traffic and use," &c. The original act providing for the construction of a boulevard is found in *Pamph. L.* 1888, *p.* 405, § 10; *Comp. Stat., p.* 4508, ¶ 203, which provides, "that said board shall establish and determine the width of the carriageway and sidewalks of said road, provided that both carriageway and sidewalk shall not exceed one hundred feet in width, and shall construct said road," &c., the two supplements (*Pamph. L.* 1893, *p.* 454, and *Pamph. L.* 1896, *p.* 93), have no application to this controversy.

The objects attained by the "islands" are (1) the separation of traffic in two streams; (2) the establishment of zones of safety for pedestrians; (3) convenience of access to conduits and economy in averting future tearing up of the road, and (4) the accomplishment of each of the foregoing objects in a way to beautify the city.

The plans and specifications for the work to be done brought up by the record provide for "parkway islands" in the centre of the boulevard. The "islands" are to be six feet wide, three feet on each side of the centre line of the boulevard, thus leaving fifty-four feet for vehicular traffic. The "islands" are to extend throughout the entire length of both improvements, except that where the boulevard is intersected by other highways or streets the islands terminate ten feet back of the property line of each intersecting highway or street. According to the estimate of the county engineer, it would cost nine thousand and five hundred and ninety dollars ($9,590) more for the construction of the "islands" than for the concrete paving. The estimated cost of the conduits is eleven thousand ($11,000) dollars. Part of

the Hudson boulevard is now a part of what is known as the "Lincoln Highway."

The first ground of attack made by the prosecutor is, that the boulevard commissioners have no power to reconstruct the Hudson boulevard with a centre parkway or islands. The argument is, the act means just what it says, a reconstruction of a pavement already laid, it does not authorize an entirely new design of two carriageways with parkway islands between, such as is contemplated in the present case. The original act contemplates but one carriageway with sidewalks on either side. *Pamph. L.* 1888, *p.* 405; *Comp. Stat., p.* 4508, ¶ 203. The case of *Godfrey* v. *Freeholders of Atlantic County,* 90 *N. J. L.* 517, is not helpful. The proceedings in that case were based upon the acts *Pamph. L.* 1912, *p.* 809, and *Pamph. L.* 1914, *p.* 203. We think there is ample power or authority in the act under which these proceedings are based for the commissioners to do what is contemplated to be done under the plans and specifications; reinforce means to enforce over again, relay to lay again, reconstruct to construct again, rebuild to build again or anew, to make extensive repairs or alterations; 7 *Words and Phrases* 6007. These powers are all to be read in the light of the legislative criterion that they were "to meet the requirements incident to increase of population, traffic and use." We have no doubt that the proposed reconstruction is within these broad powers. We have no concern with the wisdom of the proposed plan; that is an administrative and not a judicial function. We search the statute simply to ascertain whether the legislature has granted to the boulevard commissioners the power to adopt the proposed plans and specifications in the record. We think the board is vested with such power. The resolutions cannot be set aside on the first ground, viz., lack of power.

The second ground of attack is, that the boulevard commissioners did not comply with section 2 of the above act (*Pamph. L.* 1908, *p.* 108; *Comp. Stat., p.* 4531, ¶ 279), which provides that before advertising for proposals for contracts they *shall* from time to time submit a full state-

ment of the work necessary and proposed to be executed at that time, with the estimated cost of such work, and a requisition for the amount of such cost, to the body vested by law with the control of the finances of said county, *i. e.*, the board of chosen freeholders. The facts on this point in brief are, that on May 25th, 1917, bids were finally received for the work here under consideration, the bids were then referred to a committee; on May 28th, 1917, a resolution was passed, the evident purpose of which was to comply with section 2, *supra*. It is argued that this section is mandatory, for it provides that its requirements *shall* be performed before advertising for proposals—an answer to this is said to be found in *Pamph. L.* 1916, *p.* 525, and *Pamph. L.* 1917, *p.* 803, known as the Pierson bond act, which supersedes the provisions of section 2, *supra;* that the provisions of section 2, *supra,* at best are not mandatory but directory merely. It is not necessary to pursue this point further, in the view which we take, because we think we are bound by what this court said in the case of *Mueller* v. *Boulevard Commissioners,* affirmed in the Court of Errors and Appeals, 87 *N. J. L.* 702, that there is no objection to the commissioners taking the necessary steps before the freeholders had sold the bonds. What is forbidden is the prosecution of the work. The mere receipt of bids does not bind the commissioners of the county, that in principle is applicable to the point under discussion. We think the resolutions cannot be set aside on this ground.

The third ground of attack is, the provisions of *Pamph. L.* 1912. *p.* 593, *ch.* 342, were not complied with; that statute provides "such advertisement shall be published for two weeks in at least two daily or weekly newspapers of the county." The first advertisement appeared on May 11th, and the last on May 24th. This, it is argued, is not a publication for two weeks, but only thirteen days, because there was only a period of thirteen days between the first and last publication. This conclusion is reached by subtracting eleven from twenty-four, the date of the last publication. Citing as authority, *Pisa* v. *State,* 56 *Neb.* 455. In that case, however, the notice required by the statute was "at

least two weeks;" in the statute under discussion, the publication is required to be for two weeks; the cases cited by the prosecutor from our Court of Chancery in support of his position are not in point. They are cases construing the notice required to be published in the statute for the sale of lands, except one, and those statutes require a notice of "at least two months" or "at least four weeks," &c. The other is the Corporation act referring to dividends paid on preferred stock, "for the period of at least one year." We have been unable to find any case in which this statute has been construed. On May 9th, 1917, the resolution directing the advertisement for bids was passed, the bids to be received at two o'clock P. M., May 25th; to be published in the "Hudson Observer," "Jersey Journal," "Hudson Dispatch," "Bayonne Review," "Bayonne Times" and "Engineering News"; on May 25th, 1917, scaled bids were received, as per advertisement.

The resolutions of award were adopted on June 6th, 1917. By the defendant, it is argued the date from which the publication must be figured is May 25th, deducting two weeks or fourteen days from May 25th, leaves May 11th; this is the date of the first publication in all of the papers enumerated, except one; the advertisements were made in all the above papers on May 11th, 14th, 16th, 19th, 22d and 24th, except one which was one insertion only, on the 17th; so, it is contended, the correct way to compute the period required by the statute, *for two weeks,* is to include the dates of the first and last publication, this it is said is a period for two weeks for which it was published, the publication covered exactly two weeks of time, for two weeks means during two weeks, during the space of time of two weeks, in the space of time of two weeks or through the space of time of two weeks.

In view of the fact, however, that there has at least been a substantial compliance with the requirements of the statute, that it is not shown or even pretended that any bidder was prevented from bidding on this account, that the awards were made to the lowest bidder for what seems to be a necessary and desirable public improvement, and that inser-

tions in a weekly paper were contemplated by the statute, we are unwilling to set aside these resolutions on a doubtful construction of a statute where no injury to the public is claimed or asserted. What was said by this court, with slight verbal changes, in the case of *Atlantic Gas, &c., Co. v. Atlantic City*, 73 *N. J. L.* 360, is pertinent and conclusive on this point under discussion; as a taxpayer the prosecutor has a different standing, viz., as the representative in theory of the taxpaying interest of the county; but the bids that the prosecutor is attacking are the lowest, hence the interest of the taxpayers would not apparently be advanced by the success of such attack. *Certiorari* is a discretionary writ, hence a prosecutor who in theory represents the taxpayers of the county should not be permitted to work an injury to them in point of fact. Proceedings to review municipal action under such prerogative writ are not personal actions in which the prosecutor may upon sharp grounds insist upon a personal right. Rather is the prosecutor to be regarded, if not as *amicus curiæ*, as a friend of the public. The court and the prosecutor who hold this attitude towards the public are in contemplation of law inspired by a common purpose, to the accomplishment of which there must come a time when the court should determine the public rights, represented in the prosecutor, upon grounds that substantially affect them, and not upon sharp questions and verbal criticisms, which under the guise of protecting the public from a figmentary injury, inflict upon it one that is both actual and serious. We think the resolutions should not be set aside on this ground.

The fourth ground of attack is, that in the resolution passed by the boulevard commissioners on March 7th, 1917, the curb and gutters were excepted, whereas the statute (*Pamph. L.* 1908, *p.* 107, § 1; *Comp. Stat., p.* 4531, ¶ 279) requires the curb and gutters to be included in the resolution. The answer to this is, the plans and specifications ordered to be prepared by the then engineer, Robert Law, were on the 11th of April, 1917, rejected and the engineer dismissed, because he had not complied with the order given to him by

the board; at the same meeting, on the 11th of April, 1917, a new engineer, Thomas J. Wasser, was appointed; all other resolutions heretofore adopted by the board on this improvement were rescinded; on April 18th the plans and specifications prepared by the new engineer, Thomas J. Wasser, were read and adopted; on April 23d, they were amended and then approved and adopted; on May 2d the attention of the board was directed to the curb and gutters, in a letter from the engineer, that the reconstruction will include the curb and gutters, and the cost of the same stated in detail; on May 9th the specifications approved April 23d were again amended and approved; on the 25th sealed bids were received; on May 28th a resolution in the exact words of the statute, reciting the curb and gutters, stating the lowest bidder, which is the estimated cost of such work, was passed by the boulevard commissioners, and a copy forwarded to the board of chosen freeholders of Hudson county. This statement of facts, we think, show that the board substantially complied with the statute in reference to the curb and gutters, viz., that it had become necessary in the opinion of the body vested by law with the care of such road to improve the same, including the curb and gutters—inferentially, they were included and, at least once, expressly included in the words of the statute in the resolution of May 28th.

As was said in the case of *Delaware River Transportation Co.* v. *City of Trenton,* 85 *N. J. L.* 479, 483; *affirmed,* 86 *Id.* 680 : "Manifestly, the making of the recommendation implies an opinion of suitability and convenience;" so, here, the adoption of the plans and specifications implied a necessity in the opinion of the commissioners. It is expressed in the resolution of May 28th, in the exact words of the statute, passed at a regular meeting of said body, so, it seems to us, that in this case, it is immaterial when the resolution was passed, including curb and gutters, so long as it was passed before the awards were made. We think the resolutions cannot be set aside on this ground. This disposes of all the points argued by the prosecutor.

The municipal action brought up by this writ is affirmed, with costs.