DANIEL W. GIBSON, JR., PETITIONER-RESPONDENT, v. BOARD OF EDUCATION OF THE CITY OF NEWARK, ESSEX COUNTY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 10, 1985—Decided October 18, 1985.

Before Judges PRESSLER, DREIER and BILDER.

*H. Richard Chattman* argued the cause for appellant (*Podvey, Sachs & Catenacci,* attorneys; *Robert L. Podvey,* of counsel; *Steven Firkser,* on the brief).

*Nathanya G. Simon* argued the cause for ·respondent (*Schwartz, Pisano & Simon,* attorney; *Nathanya G. Simon,* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, filed a statement in lieu of brief on behalf of the State Board of Education (*Alfred E. Ramey, Jr.,* Deputy Attorney General, on the statement).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

In 1975, as a result of the concerted effort of the Legislature, the Governor and the Commissioner of Education, the State, by the enactment of *N.J.S.A.* 18A:17A–1, *et seq.,* responded to the increasingly intolerable chaos infecting the Newark public school system. The legislative scheme created for Newark was the so-called unit control system, achieved by the creation of the unique office of executive superintendent exclusively responsible for the day-to-day educational, fiscal and operational activities of the district and the concomitant allocation to the Newark Board of Education (Newark Board) of a role limited to policy-making. *See N.J.S.A.* 18A:17A–3 and –7. These consolidated cases raise significant and novel questions respecting the relationship and respective powers of the Newark Board and its executive superintendent pursuant to that statute.

Our review of the record, considered in light of counsel's argument, now persuades us that the issues raised by this appeal so intimately affect educational policy, practice and organizational structure as to require their prior consideration by the State Board of Education, which has not yet addressed the substantive questions on their merits. We therefore remand to the State Board for that purpose.

Explanation of the present posture of this litigation requires reference to its procedural history. On August 8, 1983, petitioner Daniel W. Gibson, Jr., then a member of the Newark Board, filed with the Commissioner of Education a verified petition whose gravamen was the claim that the Newark Board, by various of its official actions, was attempting to subvert the fundamental legislative scheme of *N.J.S.A.* 18A:17A–1, *et seq.*

The specific areas of controversy include the Newark Board's attempt to hire a lobbyist/consultant to perform duties allegedly assigned by statute to the executive superintendent; its attempt to remove the Office of Board Affairs, the executive director of Board Affairs and the Office of General Counsel from the general supervisory authority of the executive superintendent; and its retention of outside counsel to provide it and its individual members with legal services beyond those available from general counsel for the district. The petition also alleged that the Newark Board had conducted several meetings in violation of the Open Public Meetings Act, *N.J.S.A.* 10:4-6, *et seq.*, thereby requiring the nullification of actions taken at those meetings respecting the approved contract for the lobbyist/consultant.

The matter was referred by the Commissioner of Education to the Office of Administrative Law for hearing, and the administrative law judge issued an initial decision on February 2, 1984, which sustained Gibson's position with respect to the Open Public Meetings Act but which otherwise approved the challenged actions of the Newark Board as within its policy-making function. In short, it was the view of the administrative law judge that the Office of Board Affairs and the Office of General Counsel were, as a matter of statutory interpretation, subject neither to supervision by the executive superintendent nor to any obligation to report to him. The administrative law judge further concluded that outside legal counsel was appropriately available to respond to requests for legal opinions by individual board members as well as the board collectively and indeed that the retention of outside counsel without recommendation by the executive superintendent was within its inherent power. Finally, the administrative law judge was satisfied that as a matter of concept the Newark Board was also within its power in contracting with the lobbyist/consultant, the only legal defect in the contracting process having been the Open Public Meetings Act violation.

Following his receipt of exceptions from the parties and after considering the record in the matter, the Commissioner of Education issued his determination on March 30, 1984, concurring with the administrative law judge only in respect of the Open Public Meetings Act issue and disagreeing with all of his substantive conclusions. In addition to setting aside the findings of the administrative law judge which had approved of the specific Newark Board actions challenged by Gibson, the Commissioner issued the following directives to the Newark Board in an evident attempt to resolve for the future potential areas of jurisdictional conflict between it and its executive superintendent.

\* \* \* \* \* \* \* \*

2. The Board shall promulgate the necessary Board rules with sufficient specificity pertaining to the employment of outside consultants which shall be in compliance with *N.J.S.A.* 18A:17A–3 *et seq.* and *N.J.A.C.* 6:20–8.1 *et seq.*

3. The Board shall promulgate the necessary rules specifying the manner and circumstances under which outside counsel is to be retained by the Board without compromising or diminishing the effectiveness of those powers and duties of the Executive Superintendent or the Office of General Counsel.

4. The Board shall further clarify through its rule-making authority the manner and conditions under which legal advice of Board counsel is to be obtained not inconsistent with this decision.

5. The Board shall take the necessary action to revise its chart of organization to comply with the Commissioner's decision herein, establishing the proper placement for the Offices of Board Affairs and General Counsel, under the authority and supervision of the Executive Superintendent.

6. The Board shall immediately take the necessary action to terminate the lobbyist/consultant contract in effect with Mr. Kittrels and shall reassign any or all of the duties described therein that the Board wishes to continue to the Office of the Executive Superintendent and/or his designee pursuant to *N.J. S.A.* 18A:17A–3 and 6.

The Commissioner also directed the Newark Board to compensate Gibson for his legal fees in prosecuting the action.

On April 27 the attorney who had represented the Newark Board in these proceedings filed a notice of appeal with the State Board of Education in which he explained that the Newark Board had not formally authorized the appeal of that action since it had been unable to reorganize and commence proper functioning following controversies which had attended the

early April change of its membership. On May 14, 1984, however, the Newark Board was finally properly constituted and met. It then considered the question of an appeal from the Commissioner's decision and voted to ratify counsel's previous filing of the notice of appeal. Despite the documentation of the ratifying vote provided to the State Board, it nevertheless dismissed the appeal on June 6, 1984, on the ground that a properly authorized appeal had not been taken within the statutory 30-day period prescribed by *N.J.S.A.* 18A:6–28. The Newark Board's appeal from the State Board's dismissal is the first of the matters now before us (*Gibson I*).

The second matter before us, *Gibson II,* arises out of two resolutions adopted by the Newark Board on May 29, 1984, the first of which relieved both general counsel and outside counsel from any obligation to report to the Newark Board through the executive superintendent, and the second of which appointed general counsel without a prior recommendation of the executive superintendent. Gibson filed a second verified petition with the Commissioner contending that both of these resolutions violated *N.J.S.A.* 18A:17A–3 and 5, and the Commissioner, by a determination issued on January 21, 1985, agreed with Gibson's contention, rejecting the contrary conclusion of the administrative law judge.

On February 7, 1985, the Newark Board filed a motion with this court seeking to consolidate *Gibson I* and *Gibson II* and further seeking leave to appeal the Commissioner's decision to this court directly. That motion was granted.

The foregoing recitation of the history of this litigation makes clear that the threshold issue before us in *Gibson I* is whether the State Board properly dismissed the Newark Board's appeal on procedural grounds. We are firmly convinced that it erred in so doing.

*N.J.S.A.* 18A:6–28 requires an appeal to the State Board to be taken within 30 days after the decision appealed from. The notice of appeal here was filed within that time period.

The fatal defect found by the State Board was the fact, frankly conceded by counsel upon filing, that the appellant, the Newark Board, had not formally approved that action. The record demonstrates, however, that the Newark Board did not meet at any time in April 1984 because of its inability to reorganize as scheduled on April 10, 1984, as a result of the confusion over who its new members actually were. Indeed, on April 24, 1984, the Commissioner of Education ordered the Newark Board not to conduct any of the reorganizing activities scheduled for its meeting of that date. *See Board of Education v. Brown and Brown,* 1984 *S.L.D.* 7 (May 2, 1984), aff'd by the State Board (1984). On April 24 no quorum was present, and consequently no meeting was ever convened and no executive session ever took place. It was only after this fiasco, on April 27, 1984, three days short of the expiration of the appeal, that counsel filed the notice in order to protect the right of appeal which he had ascertained was at that point desired by a majority of individual members.

Under these circumstances, we are satisfied that it was virtually impossible for a formally approved notice of appeal to have been timely filed and hence that the filing of the notice on condition, as it were, of subsequent formal ratification constituted substantial compliance with the time limitations. *See, e.g., Bernstein v. Board of Trustees,* 151 *N.J.Super.* 71, 76–77 (App.Div.1977). To hold otherwise would be fundamentally unfair and would needlessly and unjustifiably deprive the Newark Board of a right to appeal in difficult and sensitive litigation involving novel issues of significant public interest. We therefore reverse the State Board's dismissal of the notice of appeal in *Gibson I.*

■ Having determined that the appeal in *Gibson I* is procedurally viable, we must next consider the forum which should first decide it. We have reached the conclusion that our grant of leave to appeal to us directly from the Commissioner's decision in *Gibson II* was improvident. We then believed that

the appeal primarily involved a question of the attorney-client relationship, and it was our view that a court was as well, if not better, equipped to determine that issue as the State Board of Education. Having had, however, the opportunity fully to review the record on the consolidated matter and to consider the oral arguments of counsel, we are now persuaded that the contours of this controversy transcend that issue and indeed involve very basic questions significantly affecting the entire operation of the Newark school system. We are persuaded that the status of the Office of Board Affairs and its executive director and the asserted right of the Newark Board to engage in the practice of retaining outside consultants independent of the executive superintendent's role are issues of equal importance and that all of these issues intertwine. It is our further view that these issues implicate matters of educational policy as to which this court should defer in the first instance to the expertise and experience of all levels of the agency charged with the administration of the school laws. *See Abbott v. Burke*, 100 *N.J.* 269 (1985). *And see also Dougherty v. Human Services Dep't*, 91 *N.J.* 1 (1982).

We have therefore determined to remand both *Gibson I* and *Gibson II* as a consolidated controversy to the State Board for its action. We do, however, retain jurisdiction and direct that the State Board shall conclude its consideration of the appeal from the Commissioner's determinations within 90 days from the date hereof and shall file its determination with the clerk of this court within that time. Any party wishing to pursue an appeal from that determination or any of its components shall advise the court of that intention within 10 days thereafter and an appropriate expedited scheduling order will then be entered. In the interim, we have determined that no stay shall be granted from the Commissioner's determinations.

We add, however, a single *caveat*. We are satisfied that even if it should be ultimately held that general counsel holds an office subject to the executive superintendent's recommend-

ing power pursuant to *N.J.S.A.* 18A:17A–5(c), we would nevertheless conclude that in matters such as this in which there is a controversy between the Newark Board and the executive superintendent respecting the scope of the respective statutory authority of each and which by its nature implicates the Newark Board's policy-making and legislative province, the board is entitled to retain counsel of its own choosing to advise it and to conduct any ensuing litigation. We therefore hold that the Newark Board's retention of its present counsel to represent it in this litigation is a valid action irrespective of the ultimate outcome of the underlying disputes.

The decision of the State Board of Education in *Gibson I* dismissing the appeal on procedural grounds is reversed, and we remand both *Gibson I* and *Gibson II* to the State Board for consideration on the merits in accordance with this opinion. Jurisdiction is retained.