**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5213-17T4

JOHN A. SMITH, III,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,

     Respondent-Respondent.

_____

Argued October 10, 2019 – Decided November 27, 2019

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, PERS No. 2-454896.

Daniel W. Sexton argued the cause for appellant.

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Austin J. Edwards, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner John Smith appeals from the May 3, 2018 final decision of the Board of Trustees of the Teacher's Pension and Annuity Fund (Board). We affirm.

Our review of the record reveals that effective September 1, 1968, Smith was enrolled in the Teacher's Pension and Annuity Fund (TPAF) as a teacher with the Jersey City Board of Education. In April 1977, after nine years of teaching, briefly interrupted by a term of military service, Smith took an approved leave of absence from teaching and became an Assistant Court Administrator in Hudson County. In the court system, Smith enrolled in the Public Employee Retirement System (PERS). On Smith's PERS enrollment application, he advised he was a member of "New Jersey Teachers' Pension Annuity (frozen)" and did "not wish to transfer accumulated [illegible] to this [illegible] at this time."[1]

On May 22, 1981, Smith requested an additional one-year continuation of his leave of absence from teaching. Smith's previously-approved leave of absence was scheduled to end September 1, 1981. While Smith never received

---

[1] Due to the quality of the record supplied, it is difficult to see what is actually written on the application. At present, Smith does not argue that he meant to transfer his service from TPAF to PERS at the time of his 1977 application.

A-5213-17T4

notification confirming or denying his extended leave of absence, he simply assumed he was granted an indefinite leave of absence.

In 1991, Smith began teaching at Hudson County Community College (HCCC). There, Smith was eligible for enrollment in an Alternative Benefit Program (APB), but waived his right to join and instead continued his enrollment in PERS.

In 2003, Smith inquired about the status of his TPAF account, and was informed by the Division of Pensions and Benefits (Division) that "consistent with state statute and regulations, pension contributions associated with [Smith's] inactive membership account have been transferred to the Department of the Treasury-Unclaimed Properties [(Unclaimed Properties)]."

Nine years later, in August 2012, in reference to his December 2011 Personal Benefits Statement, Smith inquired as to why the statement had not credited his PERS pension with his years of teaching service in Jersey City. In response, the Division advised Smith they were aware of his roughly nine years of service as a teacher, but reminded him that, as they informed him back in 2003, the account was escheated to Unclaimed Properties. The Division's correspondence explained how Smith could purchase his TPAF services in his PERS account.

A-5213-17T4

Five years later, in February 2017, Smith sought "a copy of any notice of cessation of [his] membership in [TPAF] as [he] never withdrew from the [p]ension." A March 20, 2017, reply again notified Smith his former membership was transferred to Unclaimed Properties. A week later, Smith contacted the Division and requested they accept his Application for Interfund Transfer. In his letter, Smith stated he never received notice of termination of his TPAF pension and his ultimate goal was to have his years of service as a teacher be credited toward his PERS pension.

In June 2017, the Division informed Smith he was not eligible for an interfund transfer from TPAF to PERS because his right to transfer expired September 30, 1980, two years after his last contribution to the account.[2] Two weeks later, Smith sent the Division another letter accompanied by documentation to support his eligibility to transfer his TPAF service to PERS.[3] In response, the Division advised Smith he was ineligible to transfer his service because Smith was not granted an indefinite leave of absence from teaching,

---

[2] This appears to be an error on the part of the Division. Smith's right to transfer his account would have ended in 1983, two years after his leave of absence expired, not in 1980.

[3] Smith's letter was not included as part of the appellate record.

therefore his account expired two years after the end of his leave of absence. Smith appealed the Division's determination to the Board.

In January 2018, the Board upheld the Division's administrative determination denying Smith's request pursuant to N.J.S.A. 18A:66-7(a). In February 2018, Smith asked the Board to reconsider its denial or grant a hearing with the Office of Administrative Law.

By letter dated May 4, 2018, the Board denied the request for an administrative hearing and on June 8, 2018, the Board issued a Final Administrative Determination. This appeal followed.

"An administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (alteration omitted) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). However, we are "in no way bound by [the Board's] interpretation of a statute or its determination of a strictly legal issue." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting 37 Steven L. Lefelt et al., New Jersey Practice: Administrative Law Practice, § 7.19 (2d ed. 2000)). Thus, we review issues of statutory interpretation de novo. McGovern v. Rutgers, 211 N.J. 94, 108 (2012).

On appeal, Smith argues the Board did not comply with N.J.S.A. 18A:66-7, which requires notice to a member's last employer sixty days prior to membership expiration. Smith asserts the plain meaning of the statute requires written notice of the expiration of the account, and the Board's failure to provide such notice to his last employer violated his due process rights. Smith further argues that while the modern TPAF statute mandates notice to the last employer, the predecessor statute, N.J.S.A. 18:13-112.9, and the TPAF handbook provide for additional notice to a member's home address.

N.J.S.A. 18A:66-7 governs cessation of membership in TPAF.

> Membership of any person shall cease:
> (a) if, except as provided in section 18A:66-8, he shall discontinue <u>his service for more than two consecutive years;</u>
> (b) upon the withdrawal by a member of his accumulated deductions as provided in this article;
> (c) upon resignation and election to receive, in lieu of the return of his accumulated deductions, the benefits provided in section 18A:66-36 and 18A:66-37;
> (d) upon retirement;
> (e) at death;
>
> but not otherwise except as provided in this article.
>
> <u>The pension fund shall send written notice in care of the last employer of a member at least [sixty] days in advance of the date on which his inactive membership shall expire as provided in subsection (a) of this section.</u>

[(emphasis added).]

Smith argues the Division never complied with the statute's written notice of membership expiration requirement.

We begin by considering when Smith's TPAF membership actually expired. In May 1981, Smith was notified that his previous leave of absence was set to expire, so he asked to extend the leave of absence "until Sept[ember] 1982 due to personal business reasons and other government service." Smith asserts he never received a response regarding his request to extend his leave of absence to September 1982, yet Smith argued to the Division that "my employment status was an indefinite leave of absence." Nothing in the record supports this contention that Smith was granted an indefinite leave of absence.

Continuation of membership after a leave of absence is governed by N.J.S.A. 18A:66-8. In relevant part, the statute states:

> If a teacher: . . . discontinued from service without personal fault or through leave of absence granted by an employer or permitted by any law of this State; and . . . has not withdrawn the accumulated member's contributions from the retirement system, the teacher's membership may continue, notwithstanding any provisions of this article, if the member returns to service within a period of [ten] years from the date of discontinuance from service.
>
> [N.J.S.A. 18A:66-8(a)(1)-(2).]

7

Smith provided no documentation to demonstrate he was granted an indefinite leave of absence. It defies logic to assume that where Smith only requested a one-year extension, a lack of response meant he was granted an indefinite leave of absence. More significantly, although Smith never resigned, he abandoned his position as a teacher.

We have said "abandonment of employment by a public employee . . . must be total and absolute, and that temporary nonuser or neglect of duty is not ordinarily sufficient to sustain an inference of abandonment." McAleer v. Jersey City Incinerator Auth., 79 N.J. Super. 142, 147 (App. Div. 1963). After his 1981 request for an additional year's leave of absence, Smith never returned to his teaching position with the Jersey City Board of Education. Even if his leave was approved, extending his leave until September 1982, Smith's failure to return to teaching within ten years after his leave of absence indicates he abandoned his position.

Smith argues he returned to work as a teacher in 1991 at HCCC in a position that could have been covered by TPAF. N.J.S.A. 18A:64A-13 (allowing all teaching staff at county colleges to have the rights and privileges of teachers employed by local boards of education). Smith argues he should now be allowed to purchase his TPAF at the rate in effect in 1991. However,

Smith declined enrollment in HCCC's ABP and instead chose to continue making contributions to PERS; he made no contributions to his TPAF during this time, hence, we find no basis to conclude Smith should be allowed to purchase his service at the 1991 rate.

Smith frames the case as similar to Zigmont v. Board of Trustees, 91 N.J. 580 (1983), but his reliance on Zigmont is misplaced. Zigmont, a teacher, was erroneously informed she could not purchase the retirement credit from a period of maternity leave. Id. at 581. Roughly two and a half years after Zigmont returned from her leave, she learned she would have been able to purchase the retirement credit within one year of the end of her leave. Ibid. The Court remanded the case to the Board to consider whether the petitioner was entitled to a waiver, directing the Board to consider the fiscal effect on the fund and practices in other school districts. Id. at 584.

Zigmont is different from this case, as Zigmont returned from her leave of absence and resumed teaching at the school, where Smith did not. Further, Zigmont was acting on misinformation from a school district employee associated with TPAF, where Smith has alleged no misrepresentation that caused him not to transfer his TPAF service credits. And where Zigmont took prompt action when she learned she was misinformed, Smith should have known

9 <span>A-5213-17T4</span>

that his TPAF service credit would expire two years after the end of his leave of absence, yet took no steps to reconcile his accounts even in 2003 when he learned his account had been transferred to Unclaimed Properties. His next contact with the Division was not until nine years later in August 2012, when he inquired about his December 2011 PERS account.

Smith also argues his matter is similar to Bernstein v. Board of Trustees, 151 N.J. Super. 71 (App. Div. 1977). It is not similar. There, we determined a teacher should be allowed to receive ordinary disability retirement benefits when she filed an application twenty-six days late. Id. at 72, 79. In reaching our determination, we could "discern no basis to find the Fund prejudiced by the failure of petitioner to comply with the letter of the law." Id. at 78.

Unlike Zigmont and Bernstein, this case presents a substantial lapse in time. Smith cannot argue the fund would not be prejudiced by his service credit transfer when he has asked for either the ability to purchase his credit at a three-decade-old rate, or alternatively, the fee-free transfer of his TPAF credit to PERS.

Smith also argues he was denied due process because the Division did not produce proof it sent notice of Smith's TPAF account expiration to the school, his last employer. The TPAF statute provides that the Board "shall send written

10

notice in care of the last employer of a member at least [sixty] days in advance of the date on which his inactive membership shall expire." N.J.S.A. 18A:66-7. However, this does not rise to the level of a due process claim.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of [property] interests that a person has already acquired in specific benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576 (1972). However, no lack of due process denied Smith a benefit to which he would ordinarily be entitled. To the contrary, the service credit from Smith's TPAF credit was sent to Unclaimed Properties, and he can still claim it. Further, a June 2017 letter informed Smith he could purchase his TPAF credit through his PERS account. Smith asserts purchase now is prohibitively expensive. That may be true, but it does not mean Smith was summarily denied the right to his property. Rather, his TPAF service credit could have been claimed in other forms – just not via fee-free interfund transfer to his PERS account for years after Smith sat on his rights.

Smith had notice and contact with the Division regarding his TPAF account in 2003 when he was informed his account had been sent to Unclaimed Properties. He did not follow up with the Division until 2012, when he was again informed his service credit had expired. Even after this 2012

11

correspondence, Smith did not contact the Division to resolve the matter until February of 2017.

Smith's other arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION