782 A.2d 479 (2001)
344 N.J. Super. 453
Wilford WATTS, Plaintiff-Respondent,
v.
Brenda B. CAMALIGAN and Ibarrarue G. Camaligan, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 2001.
Decided October 24, 2001.
*481 Francis X. Ryan, Cherry Hill, argued the cause for appellants (Green, Lundgren & Ryan, attorneys; Mr. Ryan and Matthew K. Mitchell, on the brief).
Patrick J. Mangan argued the cause for respondent (Rabb, Hamill & Stillman, attorneys; William E. Rabb, Woodbridge, on the brief).
Before Judges STERN, COLLESTER and LINTNER.
*480 The opinion of the court was delivered by LINTNER, J.A.D.
This interlocutory appeal requires us to decide, for the first time, whether a plaintiff's failure to provide defendant with a certification from a licenced treating physician or a board-certified licensed physician pursuant to N.J.S.A. 39:6A-8a mandates a dismissal with prejudice, absent a showing of good cause to permit an extension of up to sixty days. We hold that plaintiff's failure to comply with the physician certification requirement of the compulsory no-fault liability insurance provisions of N.J.S.A. 39:6A-8a, under the circumstances of this case, required a dismissal without prejudice and the motion judge's failure to enter such an order was error. However, we see no reason to interfere with the motion judge's refusal to enter an order of dismissal without prejudice because entry of such an order, at this stage of the litigation, would serve no legitimate purpose. We therefore remand for further proceedings.
Because they are interrelated, we combine the procedural history with the relevant facts. On March 17, 2000, plaintiff, Wilford Watts, filed a complaint against defendants, Brenda and Ibarrarue Camaligan, for injuries he allegedly suffered in a February 8, 2000, automobile accident occurring on Route 9 in Lakewood. Defendants filed their answer on April 19, 2000.
*482 On September 20, 2000, defendants filed a motion to dismiss for failure to provide a physician certification within sixty days of the filing of defendants' answer as required by N.J.S.A. 39:6A-8a. In response, plaintiff filed a certification dated October 6, 2000, signed by Dr. John L. Hochberg.
Dr. Hochberg's certification indicated that he was a "licensed treating physician or Board Certified licensed physician to whom the above-referenced plaintiff was referred." It also indicated that he had first examined plaintiff on July 18, 2000, and that his initial diagnosis was cervical and lumbar radiculopathy. The certification provided that plaintiff's injuries were confirmed by "objective clinical evidence," specifically an EMG evidencing a lumbar radiculopathy and an MRI noting disc bulges at multiple levels. The doctor's diagnosis at the time of certification was lumbar radiculopathy and stenosis.[1] Finally, the doctor checked off a portion of the certification stating that, in his opinion, plaintiff sustained "a permanent injury within a reasonable degree of medical probability other than scarring or disfigurement" as a result of the motor vehicle accident.
Argument on the motion was held on October 20, 2000. Although plaintiff conceded that the filing of the certification was 150 days late, the motion judge denied defendants' motion and refused to dismiss plaintiff's complaint. On October 27, 2000, plaintiff provided defendants with a three page written report by Dr. Hochberg, expounding further on the nature and extent of plaintiff's injuries and indicating that plaintiff was initially seen by him on July 18, 2000. We granted leave to appeal, R. 2:2-4, and on December 18, 2000, remanded the matter to the motion judge "for consideration of whether `good cause,' as required by N.J.S.A. 39:6A-8a for the late certification, was shown and whether, if not, a dismissal with prejudice would be the proper remedy."
On February 15, 2001, the motion judge, following argument on the motion, adjourned the matter thirty days to permit plaintiff's counsel to submit a certification detailing why he was late and "spell[ing] out exactly what took place." On February 23, plaintiff submitted a certification from William Rabb, Esq., indicating that plaintiff was first treated by Dr. Burt Frank, D.O., in Lakewood. According to Rabb, eleven days following the accident his office wrote Dr. Frank requesting "a medical report." Having received no response, counsel's office forwarded additional written requests to Dr. Frank on June 13, June 26, August 2, and October 23 asking that he forward a "narrative medical report." According to Rabb's certification, he eventually obtained "office records" from Dr. Franks for his treatment of plaintiff on November 2, 2000, which he immediately forwarded to defense counsel as formal amendments to interrogatories.[2]
Rabb's certification also asserted that plaintiff "presented" himself to Dr. Hochberg for treatment during the month of July 2000, and was referred by Dr. Hochberg for an MRI on September 13, 2000. Rabb disclosed that he wrote requesting a written "narrative medical report" from *483 Dr. Hochberg on September 15, 2000. On September 21, plaintiff served defendants with a copy of the MRI report disclosing plaintiff's multiple disc bulges as amended answers to interrogatories. Rabb further confirms that, for the first time, his office forwarded Dr. Hochberg's physician certification form for completion on September 27, 2000, two days after receiving defendants' motion to dismiss. According to Rabb, a second and third request was made for completion of the physician certification form on October 4 and October 6, 2000.
On March 16, 2001, the motion judge again refused to enter a dismissal of plaintiff's complaint, finding that there was no design to mislead because plaintiff's counsel had made "numerous efforts" to obtain a narrative report and physician certification, despite the fact that the certification was served out of time. In addition, the judge concluded:
Secondly, the underlying reason for the cause is one that I see on a regular basis. We have busy doctors who, despite repeated requests, simply do not respond. And, in addition, there doesn't appear to have been an awareness on the part of the attorney, at least there's no mention of it in the certification, that he realized that certification was due and that he was late and that the statute was being violated.
Three, the fault or blamelessness of the litigant, here we have a litigantthere's no allegation by anyone that the plaintiff was at fault in any way. It was his attorney.
Four, the prejudice that would accrue in my opinion is negligible. Even though the statute has to mean something and, as is pointed out by Mr. Ryan, I'm not sure how far we should go in relaxing requirements of this nature. But just as I felt in the initial motion made before me, I feel that here we have good cause. We have an attorney who made repeated requests to the physician and no response. And I don't believe it appropriate to penalize the plaintiff, cause other lawsuits. In the appropriate case, there would be lawsuits filed for malpractice. Whether or not this case involves that type of malfeasance, I can't say.
But I think the appropriate thing, under our case law and in the absence of any clear direction from the Appellate Division or any other authority, I find that here is good cause and that it is appropriate to allow the plaintiff to proceed with the action despite the late submission of the certification required.
Defendant contends that the motion judge erred in finding the existence of "good cause" and that plaintiff's complaint should have been dismissed with prejudice.
We begin our analysis with the pertinent provisions of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -32, effective March 22, 1999. AICRA created two insurance coverage options: (1) a "basic policy and standard policy" which in part provides "for a revised lawsuit threshold for suits for pain and suffering which will eliminate suits for injuries which are not serious or permanent, including those for soft tissue injuries," N.J.S.A. 39:6A-1.1 and -8a; and (2) an "alternative" policy without threshold limitation, N.J.S.A. 39:6A-8b. A driver of a vehicle is not exempt from liability for non-economic damages sustained by a person covered with the alternative policy. By contrast, a person covered by a policy containing the "limitation on lawsuit option" exempts drivers from tort liability for non-economic injuries
unless that person has sustained a bodily injury which results in death; dismemberment; significant disfigurement *484 or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
[N.J.S.A. 39:6A-8a.]
A plaintiff with the limited threshold option is also required to produce a physician certification. N.J.S.A. 39:6A-8a provides in pertinent part:
In order to satisfy the tort option the plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed treating physician or board-certified licensed physician to whom the plaintiff was referred by the treating physician.
The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described above.... The court may grant no more than one additional period not to exceed 60 days to file the certification pursuant to this subsection upon a finding of good cause.
A person is guilty of a crime of the fourth degree if that person purposefully or knowingly makes or causes to be made a false fictitious, fraudulent or misleading statement of material fact in or omits a material fact from or causes a material fact to be omitted from any certification filed pursuant to this subsection.
Plaintiff's counsel conceded at oral argument that his failure to request, much less produce, the required physician certification or move for an extension of time to file a physician certification within the second sixty-day statutory period represented a lack of proper diligence, which effectively nullified any justification for a good cause extension, whether based upon extraordinary circumstances or substantial compliance. Plaintiff's late production of a physician certification controverted the express provisions of N.J.S.A. 39:6A-8a. We are satisfied that the trial judge erred in finding the existence of good cause based upon the apparent unawareness of counsel that a certification was due and the 120 day statutory time period had run. See Palanque v. Lambert-Woolley 327 N.J.Super. 158, 164, 742 A.2d 1002 (2000), cited with approval but rev'd on other grounds, 168 N.J. 398, 403, 774 A.2d 501 (2001); Burns v. Belafsky, 166 N.J. 466, 766 A.2d 1095 (2001).
Accordingly, we move on to address the pivotal issuespecifically, what sanction or remedy lies for failing to file a timely physician certification. Defendant asserts that the requirement that a plaintiff submit a physician certification pursuant to AICRA is analogous with the required submission of an affidavit of merit in a professional malpractice action, N.J.S.A. 2A:53A-27. Defendant argues that a plaintiff's failure to comply with the filing requirements of AICRA, like the failure to abide by the requirements of the Affidavit of Merit Statute, mandates a dismissal "with prejudice in all but extraordinary circumstances." Cornblatt v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998). We agree that a dismissal is warranted where there is a failure to comply with the physician certification filing requirements. However, we remain unconvinced that the dismissal should be with prejudice.
In 1995, the Affidavit of Merit Statute was enacted as part of a comprehensive package of tort reform bills passed in an effort "to `bring common sense and equity to the state's civil litigation system.'" Id. at 228, 708 A.2d 401 (quoting Office of the *485 Governor, News Release 1 (June 29, 1995)). That statute provides in pertinent part:
In any action for damages for personal injures, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
[N.J.S.A. 2A:53A-27.]
The purpose of the affidavit of merit is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious." In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997). Failure to provide an affidavit "shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. In reaching its conclusion that, absent a showing of extraordinary circumstances, a dismissal with prejudice would lie for failure to comply with the Affidavit of Merit Statute, the Court in Cornblatt observed that the dismissal was (1) "a violation of a statute rather than a court-imposed rule or order" and (2) "[t]he violation giving rise to the dismissal goes to the heart of the cause of action as defined by the Legislature." Cornblatt, supra, 153 N.J. at 244, 708 A.2d 401.
Here, as in Cornblatt, plaintiff's failure to either file a timely physician certification or, alternatively, move within the statutory limitation period for a good cause extension represents a violation of statute rather than court rule or order. Therefore, our analysis focuses on whether the failure to comply with the statutory mandate "goes to the heart of cause of action as defined by the Legislature." Ibid.
Unlike the Affidavit of Merit Statute, N.J.S.A. 2A:5A-29, AICRA does not have a specific deemer provision which addresses the effect of the failure to comply with the certification requirement. Instead, the Act provides that a plaintiff "shall" provide the required certification "[i]n order to satisfy the tort option provisions" of the subsection, which describes the types of injury required to qualify for non-economic damages under the limitation on lawsuit option. N.J.S.A. 39:6A-8a. There is no comparable provision in AICRA expressing that the failure to comply with the physician certification goes "to the heart of the cause of action."
Comparison with statutes mandating automobile arbitration, N.J.S.A. 39:6A-24 to -35, which require the filing of a motion for trial de novo within thirty days of the arbitration decision, is enlightening. N.J.S.A. 39:6A-31 provides in pertinent part that, absent a timely motion for a trial de novo or, alternatively, a motion to modify or vacate the arbitration award, "the court shall upon motion ... confirm the arbitration decision, and the action of the court shall have the same effect and be enforceable as a judgment in any other action." In Hartsfield v. Fantini, 149 N.J. 611, 695 A.2d 259 (1997), and Wallace v. JFK Hartwyck at Oak Tree, Inc., 149 N.J. 605, 695 A.2d 257 (1997), the party seeking trial de novo failed to file the required motion within the thirty-day period and the adverse party moved to confirm the *486 arbitration award. In both cases the Court affirmed entry of judgment in favor of the party requesting confirmation of arbitration award, and denied relief to the party seeking trial de novo, concluding that the failure to file a timely de novo application was occasioned by attorney neglect, which did not constitute extraordinary circumstances. See also Accilien v. Consolidated Rail, 323 N.J.Super. 595, 733 A.2d 1229 (1999) (holding that the dismissal of an action after the arbitrator found no cause for action was with prejudice where plaintiff failed to move timely for trial de novo).
Addressing the holdings in Hartsfield and Wallace, the Court in Cornblatt noted that the applicable statutes required that the motion de novo be filed within thirty days and "that the failure to file within that time period would result in dismissal of any future court actions." Cornblatt, supra, 153 N.J. at 246, 708 A.2d 401. Recognizing that a dismissal with prejudice was the proper remedy for non-compliance with the procedural requirements prescribed by the mandatory automobile arbitration statutes, the Court in Cornblatt observed that a dismissal with prejudice, absent extraordinary circumstances, should be entered where "a plaintiff's failure to comply with both substantive and procedural requirements [are] consistent with imputed legislative intent." Id. at 246, 708 A.2d 401 (emphasis added). By contrast, the lack of an express provision in AICRA similar to that found in N.J.S.A. 39:6A-31, requiring the entry of judgment against the non-compliant party, leads us to conclude that the imputed Legislative intent requiring dismissal of future actions found under the automobile arbitration statute is absent in AICRA.
The want of a deemer provision (N.J.S.A. 2A:53A-29) or an expression of finality as that associated with a judgment (N.J.S.A. 39:6A-31) does not end our inquiry. We examine the legislative history in order to gain some insight into the Legislature's intent. Generally, extrinsic evidence may be used to ascertain legislative intent, including committee reports and legislative history. State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997). Our goal is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992) (quoting State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980) (footnote omitted)). Although our interpretation of a statute is not bound by legislative history and sponsor statements, they nevertheless provide us with important insight into the Legislature's intent and the statute's "overall policy and purpose." Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 211-213, 584 A.2d 784 (1991); Nebinger v. Maryland Cas. Co., 312 N.J.Super. 400, 406, 711 A.2d 985 (App.Div.1998); see, e.g., Innes v. Innes, 117 N.J. 496, 505-12, 569 A.2d 770 (1990).
Section II of the Governor's conditional veto message,[3] entitled "Summary and Analysis of the Bill," discussed the principal provisions of the bill in light of "the level of interest in and the certainty of judicial interpretation." Governor's Veto Message, Senate Bill No. 3 (April 27, 1998). The analysis was broken down into two pertinent subsections: Subsection A, designated "Revised Lawsuit Threshold," was confined to approval of the new threshold language in light of the conclusion that "[t]he 1988 threshold has not *487 worked." That subsection states in pertinent part:
By allowing recovery for injuries that are nonpermanent, i.e., that heal, and for fractures that are not serious, the statute has not served as a meaningful limitation to control premium costs....
[The] Senate Bill ... replaces the existing lawsuit threshold, under which temporary, nonserious injuries qualify, with a requirement that fractures be displaced and that other injuries be serious enough never to heal sufficiently to regain normal function....
In short, I am confident that, construed in the light of the statute's clear purpose to limit standing for recovery for pain and suffering, the proposed lawsuit threshold represents a significant improvement over current law. The savings resulting from adoption of this measure will be substantial.
Subsection B of the conditional veto message, entitled "Anti Fraud Measures," discussed the physician certification requirement and made the following pertinent observations:
Complementing the tightened lawsuit threshold in controlling premium costs are several measures designed to combat fraud. First, every complaint in a pain and suffering lawsuit brought under the lawsuit threshold must be accompanied by a certification from the treating physician attesting the seriousness of the plaintiff's condition. The certification is executed under penalty of perjury; fraudulent filing of a certification is grounds for imprisonment and revocation of one's professional license. The certification is intended as an anti fraud measure to assure legitimacy; it is necessary to state a claim, not sufficient to establish one, and will be subject to challenge through the normal discovery and summary judgment processes. (Emphasis added).
The sponsors' statement also sheds light on the purpose behind requiring a physician certification. Discussing the new verbal threshold first, the statement relates:
[In] order to further limit the number of lawsuits filed and thereby reduce premiums for bodily injury coverage, the bill completely eliminates the existing verbal threshold and substitutes a new verbal threshold which is intended to eliminate some of the lawsuits for minor injuries, including soft tissue injuries, which are neither serious nor permanent. (Emphasis added).
The statement also addresses the reasons for the required certification:
Certification by a licensed treating physician that the body part or organ system has not healed to function normally and will not heal to function normally would be necessary before suit was filed. The certification would have to be based on objective clinical evidence which would include medical testing. Fraudulent certification by a physician could be a crime of the fourth degree. (Emphasis added).
Though not reflected in the record of the legislative history, the final version passed by the Legislature did not require filing of the certification contemporaneously with a plaintiff's complaint, but instead mandated its production, as a collateral document, subsequent to the filing of a plaintiff's complaint.
Like the final version of the statute, the legislative history is silent respecting whether or not the failure to comply with the certification requirement goes to the heart of the cause of action or should result in a dismissal with prejudice. Where a statute is "silent," our interpretation must be in accordance with the Legislature's intent. Accountemps v. Birch *488 Tree Group, 115 N.J. 614, 622, 560 A.2d 663 (1989); Union County Bd. of Chosen Freeholders v. Union County Park Comm'n., 41 N.J. 333, 337, 196 A.2d 781 (1964). We glean from the above legislative history that the primary and overriding purpose for requiring a physician certification is to weed out fraud occasioned by those in both the medical and legal professions who knowingly make, or cause to be made, false or misleading statements concerning the nature and extent of a claimant's injuries. Both the sponsors' statement and the conditional veto message make it clear that it is the revised verbal threshold, not the failure to file the certification, that is intended to "limit the number of lawsuits."
The physician certification requirement is intended as an anti-fraud measure to assure legitimacy, thus amounting to the imposition of a condition for the continued maintenance of a lawsuit. There is no similar provision in the Affidavit of Merit Statute delineating criminal conduct for one who purposely or knowingly makes or causes a fictitious, fraudulent or misleading certification to be filed. N.J.S.A. 39:6A-8a; cf. N.J.S.A. 2A:53A-27 to -29. The certification is a collateral pleading without which a plaintiff is precluded from continuing to prosecute an action. The requirement is procedural in nature related to the sufficiency of the pleadings, i.e. the statement of a claim. The required production is not intended to go to the establishment of a cause of action. We conclude that the failure to comply with the physician certification requirement of AICRA was not intended by the Legislature to preclude future suits for legitimate injuries sustained as the result of another's negligence.
Our analysis is consistent with R. 4:6-2(e), Failure to State a Claim, and the holding in Print Mart v. Sharp Electronics, 116 N.J. 739, 772, 563 A.2d 31 (1989) that, "barring any other impediment such as a statute of limitations," a dismissal without prejudice should ordinarily be granted in response to a successful motion for failure to state a claim. Here, the impediment to future causes of action created by the Legislature was the revised verbal threshold, not the failure to file a physician certification.
Velasquez v. Franz, 123 N.J. 498, 589 A.2d 143 (1991), concerned the application of the Illinois Business Corporations Act of 1983, which barred all claims that accrue against a corporation subsequent to its dissolution. It is illustrative of the type of impediment which would result in a dismissal with prejudice. The issue resolved by the Court in Velasquez was whether a prior federal court dismissal for "failure to state a claim upon which relief can be granted" was to be treated as with prejudice and subject to res judicata. The federal district court dismissed the plaintiff's product liability action after determining that Illinois law applied and plaintiff lacked the capacity to bring suit for injuries received in an accident occurring thirteen days after the corporation was dissolved. The Court in Velasquez held that the federal court's dismissal, which acknowledged that plaintiff could not prove a set of facts which would entitle him to relief, represented a dismissal on the merits. Id. at 511, 589 A.2d 143.
The legislative impediment created by the Affidavit of Merit Statute and the mandatory automobile arbitration statutes, like that created by the Illinois Legislature, goes to the heart of the cause of action, such that failure to comply bars future prosecution. By contrast, the physician certification requirement in AICRA focuses not on the heart of the cause of action, i.e. negligence and injury, but instead is limited to the nature and extent *489 of plaintiff's injuries existing at the time that the certification is authored.
We are satisfied, therefore, that the inability to comply with the production of a physician certification should not result in a dismissal with prejudice but should permit a future action in the event a plaintiff's injuries worsen, such that the treating doctor or specialist believes they meet the revised verbal threshold within the statute of limitations. We add, however, the following caveat. Because the certification is a collateral pleading, a complaint that has been previously dismissed without prejudice for failure to produce a compliant certification may be subject to sanctions pursuant to R. 1:4-8, Frivolous Litigation, and R. 4:6-4(b), Impropriety of Pleadings, if not accompanied by a valid physician certification pursuant to N.J.S.A. 39:6A-8a when refiled. We refer to the Civil Practice Committee the question of whether a specific court rule should be proposed and recommended to the Supreme Court which would require a plaintiff, who files a subsequent complaint with a compliant certification, to nevertheless pay sanctions sufficient to reimburse the defendant for expenses incurred in defending a prior lawsuit dismissed without prejudice for failure to comply with the physician certification requirement of N.J.S.A. 39:6A-8a.
We conclude that the motion judge's failure to dismiss plaintiff's complaint without prejudice was error. Notwithstanding our conclusion, and in view of plaintiff's production of a physician certification, albeit out of time, we are convinced that entry of an order of dismissal, at this time, would only delay the ultimate outcome and increase litigation expense. We, therefore, remand this matter for further proceedings. In doing so, we make no determination respecting the sufficiency of plaintiff's injuries or whether they in fact satisfy the verbal threshold. We leave that decision to further proceedings in the Law Division. We do not retain jurisdiction.
Remanded for further proceedings.
NOTES
[1] A second certification from Dr. Hochberg, dated November 2, 2000, was included in defendants' appendix; however, as it is substantially similar to the certification filed on October 6, it need not be discussed further.
[2] Although referred to as exhibit 19 in Rabb's affidavit, Dr. Franks' records are not provided in the appendix submitted. The only correspondence submitted is a letter dated November 2, 2000, from Rabb to defendants' counsel submitting an undated copy of the certification of Dr. Hochberg previously submitted on October 10, 2000, in response to defendants' motion to dismiss.
[3] The Governor's Conditional Veto concerned other provisions of the statute and did not recommend any changes in either the wording of the new verbal threshold or the requirement for filing a physician certification.