816 A.2d 1090

PATRICIA THOMASSON, PLAINTIFF v. CHARLOTTE M. MCQUOWN, DEFENDANT.

Superior Court of New Jersey
Law Division

July 29, 2002 [1].

---

[1] This opinion formalizes an oral decision rendered from the bench on July 19, 2002.

66

*Christopher T. Moyer*, for Plaintiff (*Weinstein & Dodig*, Attorneys).

*Aldo J. Russo*, for Defendant (*Russo & Della Badia, LLC,* attorneys).

PERSKIE, J.S.C.

This matter presents the question, not previously considered in any reported decision, of whether the provisions of the Automobile Insurance Cost Reduction Act, *N.J.S.A.* 39:6A–1 *et seq.* ("AICRA") requiring a physician's certification as a condition of satisfying the tort option provisions of the statute are applicable to any of the injuries defined in the "threshold" section of the statute ("Types 1–6" under the new statute) or rather solely to those injuries alleged to be permanent ("Type 6"). More particularly, the court is asked to determine whether a certification is required with respect to the claim of a "significant disfigurement or significant scarring" ("Type 3"). If the statute applies to the injuries claimed by the plaintiff, is dismissal of the complaint the appropriate remedy for a failure to comply? For the reasons that follow, the court determines that the statute is applicable to a claim of significant disfigurement or scarring, but that, on the facts of this case, a dismissal of the complaint for failure to file the certification is not an appropriate remedy.

On January 28, 2000, the plaintiff was injured in an automobile accident. She filed the complaint in this matter on November 9, 2000, in which she alleged permanent injuries, significant disfigurement and scarring, and economic losses as a result of the accident. After the filing of the answer, the court entered a management order on April 18, 2001, establishing a discovery schedule that provided for interrogatories, depositions of parties, witnesses, and experts, and an arbitration proceeding in February, 2002. The matter was arbitrated on March 18, 2002 and, following the defendant's "*de novo*" application, the case was added to the court's trial list. A settlement conference was held on July 29, 2002; the trial, if needed, will be scheduled in the near future.

The statute ("Section 8(a)") provides, in relevant part, as follows:

> Every owner, ... operator, ... of an automobile to which [the "no-fault" provision of the statute] applies ... is hereby exempted from any liability for noneconomic loss to a person who is subject to this subsection ... as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a **bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement** ...
>
> In order to satisfy the tort option provisions of this subsection, the plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained **an injury described above.** The certification shall be based on and refer to objective clinical evidence, which may include medical testing ... The court may grant no more than one additional period not to exceed 60 days to file the certification pursuant to this subsection upon a finding of good cause. *N.J.S.A.* 39:6A–8(a) (emphasis added).

No physician certification was ever supplied by the plaintiff. On June 10, 2002, the defendant moved for a dismissal of the complaint for failure to file the certification.[2] The plaintiff opposes the motion by arguing that no certification was required for the claim of significant disfigurement or scarring, and therefore the requirement for a certification as to the "permanent" injuries was obviated. *Puso v. Kenyon,* 272 *N.J.Super.* 280, 293, 639 *A.*2d 1120 (App.Div.1994) ("... a singular injury meeting the tort threshold will permit a claimant to sue for noneconomic loss causally related to all injuries sustained in an automobile accident"). The plaintiff also argues that (1) a certification was not required because the plaintiff "substantially complied" with the statute; (2) a certification was not required because this is a "common knowledge" case in which no certification is required (*Hubbard ex rel Hubbard v. Reed,* 168 *N.J.* 387, 774 *A.*2d 495 (2001); *Palanque v. Lambert–Woolley,* 168 *N.J.* 398, 774 *A.*2d 501 (2001)); and (3) considering the failure of the defendant to move for a dismissal earlier in the process, a dismissal is not now an appropriate remedy in the event that the court finds the statutory requirement to be applicable,

---

[2] The defendant concedes that the claim for economic loss will survive the motion in any event.

especially in light of the fact that, notwithstanding the ruling in *Watts v. Camaligan*, 344 *N.J.Super.* 453, 468, 782 *A.*2d 479 (App.Div.2001) to the effect that a dismissal for non-compliance with the certification requirement should be without prejudice, in this case the provisions of the statute of limitations would necessarily result in a dismissal with prejudice.

The plaintiff's arguments of substantial compliance and common knowledge do not, in the court's view, require extended discussion. There is no credible showing of any substantial compliance or reasonable explanation for the non-compliance, such as the court found sufficient in *Hefferon v. Gitler*, 346 *N.J.Super.* 141, 149–150, 787 *A.*2d 222 (App.Div.2001). In the *Hefferon* case the plaintiff took a series of steps to comply with the statute and generally met its purpose by retaining an expert prior to the filing of the complaint and attaching the expert's report to the interrogatory answers that were served during discovery; and then filed an appropriate affidavit of merit. In this matter the plaintiff's only proffer is that counsel did not believe the filing of a certification to be required, and there is no showing that the plaintiff made any effort to comply with the purport of the statute or that she filed any certification or substantive equivalent at any time. During discovery, however, the plaintiff did fully disclose to the defendant all of the particulars of the claimed injuries and all treatments and diagnoses by the plaintiff's physicians.

The "common knowledge" cases cited by the plaintiff were decided in the context of medical malpractice litigation; the holdings of those cases resulted from an interpretation and application of the Affidavit of Merit Statute, *N.J.S.A.* 2A:53A–26 *et seq.*, which has no bearing on this matter. The purposes of that statute are to "weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." *Hubbard, supra,* 168 *N.J.* at 395, 774 *A.*2d 495. AICRA, on the other hand, was "intended to reduce the cost of auto insurance to the consumer." *Rogozinski v. Turs,* 351 *N.J.Super.* 536, 547, 799 *A.*2d 41 (Law Div.2002). The principal

focus of the requirement in AICRA of a physician certification was to "weed out fraud occasioned by those in both the medical and legal professions who knowingly make, or cause to be made, false or misleading statements concerning the nature and extent of a claimant's injuries." *Watts, supra,* 344 *N.J.Super.* at 466, 782 *A.*2d 479. The court in *Watts* observed:

> The physician certification requirement is intended as an anti-fraud measure to assure legitimacy, thus amounting to the imposition of a condition for the continued maintenance of a lawsuit. There is no similar provision in the Affidavit of Merit Statute delineating criminal conduct for one who purposely or knowingly makes or causes a fictitious, fraudulent, or misleading certification to be filed. *N.J.S.A.* 39:6A–8(a); *cf. N.J.S.A.* 2A:53A–27 to –29. The certification is a collateral pleading without which a plaintiff is precluded from continuing to prosecute an action. The requirement is procedural in nature related to the sufficiency of the pleadings, *i.e.,* the statement of a claim. The required production is not intended to go to the establishment of a cause of action. *Watts,* supra at 466–7, 782 *A.*2d 479.

> The legislative impediment created by the Affidavit of Merit Statute ... goes to the heart of the cause of action, such that failure to comply bars future prosecution. **By contrast, the physician certification requirement in AICRA focuses not on the heart of the cause of action, *i.e.,* negligence and injury, but instead is limited to the nature and extent of plaintiff's injuries existing at the time that the certification is authored.** *Id.* at 467–8, 782 *A.*2d 479 (emphasis added).

It thus appears that, while the Affidavit of Merit Statute and AICRA have some parallel implications, the purposes of the statutes and the relationship of their respective requirements to their underlying causes of action are distinct and different. Under the Affidavit of Merit Statute, the filing of the affidavit is now a precondition to the "establishment of a cause of action;" as noted in *Watts, supra,* this is not the case with respect to the physician certification required by AICRA. Accordingly, I conclude that the "common knowledge" exception of the Affidavit of Merit Statute is not available under AICRA, and that Section 8(a) should be applied as written by the legislature.

Plaintiff's argument concerning the inapplicability of the filing requirement of AICRA to this case rests upon her assertion that the phrase "an injury described above" in Section 8(a) of the statute refers only to a "permanent injury" and not to any of the other injuries defined in the statute. As the plaintiff puts it,

"unlike a permanent injury which requires a certificate of permanency, there is no certification required for disfiguring scars." This theory is apparently premised upon the concept that the other injuries described in the threshold—death, dismemberment, significant disfigurement or significant scarring, displaced fractures, and loss of a fetus—are sufficiently visible or "objective" so as to permit a jury to evaluate them without requiring a physician certification as to their existence.

Plaintiff's construction of the statute, while superficially logical, is contrary both to the plain language of the statute and to its purposes. While it is true that some of the injuries meeting the threshold are sufficiently obvious so as to render a physician certification of limited utility, it is also true that some of the listed injuries are not that obvious. A displaced fracture, for example, must be established by expert evidence to a jury, and the loss of a fetus would also not be assertable without expert analysis. Moreover, Section 8(a) requires that the physician certification not only describe the injury that was sustained, but also, on the basis of "objective clinical evidence," assert that the "bodily injury [arises] out of the ownership, maintenance or use of such automobile in this State." The causal link is and for a long time has frequently been a major focus of our verbal threshold litigation, and the legislature's goals of lowering the costs of insurance and deterring fraud in the presentation of automobile accident claims would not be furthered by a restrictive interpretation of the language eliminating the causation issue as an element of the required certification in all but "permanent injury" claims.

In this context, the plaintiff's assertion that any disfiguring scar is exempt from the statutory requirement of a physician certification cannot be accepted. An analysis of the nature, extent, and impact of any such scar is a jury function. *Puso v. Kenyon*, 272 *N.J.Super.* 280, 292, 639 *A.*2d 1120 (App.Div.1994). However, as *Puso* itself makes clear (in that case the Appellate Division overruled the trial court's granting of the defendant's motion for summary judgment as to the issue of whether the

plaintiff's scar satisfied the threshold then in effect), in pre-AICRA litigation the issue of the sufficiency of the proofs on the subject of scarring would frequently be the subject of pre-trial motions. There is no reason to believe that the Legislature, in furtherance of its goal of reducing the cost of automobile insurance, would have created the requirement of a certification as a means of reducing the frequency or lowering the cost of litigation and yet have intended to exempt from that requirement a class of cases that had dealt with the very issues that the Legislature was attempting to address.

As the plaintiff poses the issue, "why should the plaintiff have to file a certification that the plaintiff has, in fact, died or sustained a scar that is, beyond dispute, disfiguring?" The short answer to this question is "because the Legislature said so." Defendant is correct in asserting that the plaintiff was required to have filed a physician certification with respect to the scars that she sustained, and that the failure to have done so subjects her complaint to dismissal.

■ As previously noted, failure to comply with the filing requirement of Section 8(a) "should not result in a dismissal with prejudice but should permit a future action ..." *Watts, supra,* 344 *N.J.Super.* at 468, 782 *A.*2d 479. In *Watts* the plaintiff had repeatedly attempted to obtain a report from his treating physician but was unable to do so in time to avoid the defendant's motion to dismiss the complaint. As in this case, however, the plaintiff had provided the defendant in discovery with all medical records and relevant information with regard to the claimed injuries. In *Watts* the defendant's motion was filed and heard within the applicable statute of limitations, so that the Appellate Division could conclude that "the entry of an order of dismissal, at this time, would only delay the ultimate outcome and increase litigation expense." *Id.*

■ In this matter, of course, the defendant did not bring the motion to dismiss the complaint until after the expiration of the statute of limitations. Accordingly, a dismissal at this time will

operate, as a matter of law, as a dismissal with prejudice. In view of the facts that (1) the defendant has shown no prejudice, the plaintiff having responded in a timely fashion to all discovery requests and having disclosed all of the details relating to the damages claims; (2) there is, at this time, no *bona fide* dispute that the plaintiff's scars, incurred as a result of the accident, were very serious and quite visible and permanent; and (3) the plaintiff alleges economic losses as a result of the accident, which claims will in any event be the subject of a trial, there is no basis in fairness or equity to dismiss the non-economic claims of the complaint. If the defendant's motion is granted, no trial will be avoided, no prejudice to the defendant will be ameliorated, and no claim will be presented to the jury that could not have been appropriately attested by a timely physician certification meeting the requirements of the statute. Under these circumstances, dismissing the plaintiff's complaint with prejudice would be unjust.

Defendant's motion is denied. Counsel for the plaintiff shall submit an appropriate order.