151 N.J. Super. 71 (1977)
376 A.2d 563
JUDITH C. BERNSTEIN, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1977.
Decided June 27, 1977.
*72 Before Judges FRITZ, ARD and PRESSLER.
Mr. Jeffrey W. Lorell argued the cause for appellant (Messrs. Clapp and Eisenberg, attorneys).
Mr. Erminie L. Conley, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by ARD, J.A.D.
This is an appeal from a final decision of the Board of Trustees of the Teachers' Pension and Annuity Fund (Board) holding petitioner ineligible to file for ordinary disability retirement. The Board adopted the findings of fact and conclusions of law of the hearing officer's report as well as the recommendations contained therein.
The sole question involved in this appeal is whether petitioner, a former teacher, is to be denied the right to apply for ordinary disability retirement benefits pursuant to N.J.S.A. 18A:66-39(b) because she filed her application 26 days late.
*73 Although substantial evidence was presented to the hearing officer with respect to petitioner's alleged impaired mental capacity to exercise judgment and volition, we need not and do not decide the matter on the basis of mental competency of petitioner to file an application  an issue decided below adversely to petitioner and argued by her here. We view as dispositive the issue of whether there was sufficiently substantial compliance with the statute to require the Board to accept petitioner's application. We are satisfied that there was substantial compliance which requires reversal of the Board's determination.
Petitioner was employed as a teacher and enrolled as a member of the Teachers' Pension and Annuity Fund (Fund) on March 1, 1962. She continued such employment until June 30, 1972, when she resigned because of illness. During that period she maintained her active membership in the Fund. Her last contribution to the Fund was just prior to her resignation in June 1972. In April 1974 she received a "member's expiration notice" from the Fund, advising her that on September 1, 1974[1] all her membership rights, benefits and privileges in the Retirement System would terminate. Thereafter, on August 18, 1974, her mother visited the office of the Fund, advising the interviewing counselor of her daughter's condition and that she was physically unable to obtain the necessary application papers for ordinary disability retirement. The mother was not advised that N.J.S.A. 18A:66-39(b) permits applications to be filed by one acting in behalf of the member. A record of this interview was made by the Fund's counselor, Coughlin, and admitted in evidence during the hearing below. Mr. Coughlin was not called as a witness to *74 rebut the assertion that the mother was not advised of the aforementioned statute. The record simply indicates that after describing her daughter's condition she was given the application forms, which she turned over to her daughter. Petitioner then wrote to the Fund on August 28, 1974 requesting immediate information as to whether recent federal legislation affected her pension rights. On September 11, 1974 the Fund advised that the federal legislation did not affect petitioner's pension rights. Notwithstanding the urgency, no special pains were taken by the Fund to advise petitioner prior to the so-called deadline. Upon receiving the Fund's reply, petitioner, on September 26, filed her application for disability retirement, which was denied because her account expired on September 1, 1974. This appeal followed.
It is beyond dispute that petitioner suffers from a disease known as systemic lupus erythematosus. She contracted this disease while employed as a teacher and a member of the Fund. The uncontradicted medical testimony indicates that the disease may affect any organ in the body, and in petitioner's case has reached her brain, kidneys, vascular system and skin. The prognosis is grave, and her life expectancy has been shortened. She also suffers from hypothyroidism and anxiety with depressive reaction. In the course of her employment she suffered recurrent episodes involving a loss of consciousness, an unawareness of her surroundings, a frothing at the mouth and, at least on one occasion, a loss of bladder control. In 1971 she was hospitalized as a result of this illness, and it was the manifestations of this illness which caused problems for her employer and which ultimately resulted in her resignation. Dr. Ehrenworth, her treating physician, described systemic lupus erythematosus as an allergic response to one's own body, resulting in an inflammatory reaction of connective tissue that may affect any organ in the body. Its most dreaded complication is the involvement of the kidney, which, if progressive, results inevitably in death. Significantly, Dr. *75 Ehrenworth also indicated that where the brain is affected by lupus there is an effect on consciousness, memory and judgment. Bizarre behavior, loss of memory and of consciousness are all manifestations of the disease.
Petitioner's resignation was motivated by a desire to find work which would be more compatible with her illness and less likely to exacerbate it. Her long range hope was to return to her teaching career, and she delayed making application for disability retirement because she feared such an application would be viewed unfavorably by a future school employer. The record clearly supports her physical eligibility as indicated by the hearing officer's determination: "There is little doubt in the hearing officer's mind that petitioner would be entitled to an ordinary disability retirement." Unquestionably, her illness affected her judgment in objectively evaluating her ability to resume teaching, as well as contributing to her failure to recognize that time was of the essence when filing her application at the eleventh hour.
In affirming the hearing officer, the Board contends petitioner was not a member of the Fund on September 26, 1974 when her application was filed. It is the Board's position that, in addition to the other statutory qualifications for ordinary disability retirement, one must be a member at the time the application is submitted. The basis for this decision is that N.J.S.A. 18A:66-39(b) provides in pertinent part:
* * * [A] member, * * * shall, upon the application of his employer or upon his own application or the application of one acting in his behalf, be retired for ordinary disability by the board of trustees. * * *
Furthermore, membership in the Fund is extended by N.J.S.A. 18A:66-4 to persons actively employed as "teachers," as defined in N.J.S.A. 18A:66-2(p). Cessation of membership is controlled by N.J.S.A. 18A:66-7, which provides in pertinent part:
*76 Membership of any person shall cease:
(a) if, except as provided in section 18A:66-8, he shall discontinue his service for more than two consecutive years; * * *.
We are satisfied that the factual findings made below could reasonably have been reached on the evidence present in the record. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). Our problem arises from the Board's concept of the applicable principles of law. It is basic to our system of appellate review that we are not bound by the Board's interpretation of a statute or its determination of a legal issue. Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973).
In the instant case we are satisfied that petitioner substantially complied with the statutory requisites concerning the pension application and, in view of that substantial compliance, disagree with a determination of ineligibility predicated upon a failure of membership. Under consideration is a statute designed to protect petitioner's rights, and not a statute of limitations. As stated in Geller v. N.J. Dept. of Treasury, 53 N.J. 591 (1969):
Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. 3 McQuillin, Municipal Corporations (3d Ed. Rev. 1963 § 12.1)41. They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby. McQuillin, supra, at § 12.143; and see Adams v. City of Modesto, 53 Cal.2d 833, 3 Cal. Rptr. 561, 566, 350 P.2d 529 (1960); Giuliano v. Bd. of Trustees of Firemen's Pension F., 89 Ill. App.2d 126, 231 N.E.2d 257, 258 (1967); Flake v. Bennett, 261 Iowa 1005, 156 N.W.2d 849, 854 (1968). [at 597-598]
A canvass of the cases dealing with the application of the equitable doctrine of substantial compliance indicate the following considerations: (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply *77 with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute. See generally, Zamel v. Port of N.Y. Auth., 56 N.J. 1 (1970); McCarthy v. Boulevard Comm'rs of Hudson Cty., 91 N.J.L. 137, 142 (Sup. Ct. 1918), aff'd 92 N.J.L. 519 (E. & A. 1918); Travis v. Highlands, 136 N.J.L. 199, 202 (Sup. Ct. 1947); Ray v. City of Birmingham, 275 Ala. 332, 154 So.2d 751, 752-753 (Sup. Ct. 1963); Burmek v. Miller Brewing Co., 2 Wis.2d 330, 86 N.W.2d 629, 630-631 (Sup. Ct. 1958); Brickell v. Kansas City, Mo., 364 Mo. 679, 265 S.W.2d 342, 344-345 (Sup. Ct. 1954); Perry v. City of High Point, 218 N.C. 714, 12 S.E.2d 275, 278 (Sup. Ct. 1940).
From our vantage point we see no just reason why the substantial compliance doctrine should not apply in the instant case. Miss Bernstein taught school for more than ten years and during that period contributed faithfully to the Fund. Undoubtedly, with better health she would have continued until she reached normal retirement age. That her failing health forced retirement at a much earlier age creates no prejudice to the Fund. The amount of her contributions were based on actuarial computations which recognized the possibility of early retirement because of physical infirmity.
The Fund was on notice of petitioner's pending claim as a result of an inquiry she made just prior to her resignation. Thereafter, her mother visited the Fund offices and gave oral notice to the Fund of her daughter's intention to make application for an ordinary disability retirement. Petitioner's letter of August 28, 1974 indicated to the Fund a present intention to act on her own account subject to being advised of the ramifications of recent federal legislation. Prompt action on the part of the Fund in responding to this inquiry undoubtedly would have prevented the late filing. However, the Fund saw fit to respond to the inquiry by regular correspondence. Upon being advised that the recent Federal legislation *78 had no bearing on her pension rights, petitioner promptly filed her application. As in Zamel v. Port of N.Y. Auth., supra, we are satisfied:
* * * [T]he matter before us is simply one of legislative understanding and contemplation; we find nothing whatever in the pertinent statutory history or terminology to indicate that our Legislature ever meant to exclude the highly just doctrine of substantial compliance which is so well designed to avoid technical defeats of valid claims. Cf. City of Birmingham v. Hornsby, 242 Ala. 403, 6 So.2d 884 (1942):
"Our authorities are uniform to the effect that technical accuracy is not required. Substantial compliance suffices. There was no intention on the part of the law makers that such a statute should be used as a stumbling block or pit fall to prevent recovery by meritorious claimants." (6 So.2d at 885). [56 N.J. at 6]
We discern no basis to find the Fund prejudiced by the failure of petitioner to comply with the letter of the law. In addition, as indicated earlier, her illness and her fear that filing earlier would prejudice her in the eyes of a future employer constitutes another reasonable explanation why there was not strict compliance with the statute. To deny petitioner disability benefits so obviously necessary when one considers her physical and mental condition would make a mockery of the above quoted language of our Supreme Court in Geller v. N.J. Dept. of Treasury, supra. With knowledge of the September 1 expiration date, the Board's failure to advise petitioner's mother that she might file in behalf of petitioner comes perilously close to estoppel. Recognizing, however, that we are dealing with a State agency not ordinarily subjected to estoppel, and without so ruling, we are constrained, nonetheless, to suggest that greater sensitivity in safeguarding the rights of Fund members would have avoided this controversy. See generally, Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311 (1951); Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 448-449 (1966), cert. den. 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966); West Jersey Title & etc., Co. v. Industrial Trust *79 Co., 27 N.J. 144, 153 (1958). We hold that the Board's refusal to accept petitioner's application was, under all of the aforementioned circumstances, erroneous.
Reversed.
NOTES
[1] We note that the second anniversary of petitioner's resignation was June 30, 1974. Although disclaiming authority to "relax a pension statute of limitation," the hearing officer found "[b]ecause petitioner was a school teacher this was extended over the summer months to September 1, 1974."