812 A.2d 363 (2002)
356 N.J. Super. 223
Teresa KONOPKA and Victor Konopka, Plaintiffs-Appellants,
v.
Freddie L. FOSTER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 2002.
Decided October 31, 2002.
*364 Joseph D. Kaplan & Son, Trenton, for appellant (Martin J. Hillman, on the brief).
Leary, Bride, Tinker & Moran, Cedar Knolls, for respondent (Brian Peoples, on the brief).
Before Judges HAVEY, WELLS and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiff Teresa Konopka was allegedly injured in a motor vehicle accident that occurred on June 28, 1999 and thus after the effective date of the New Jersey Automobile Insurance Cost Reduction Act (AICRA), L. 1998, c. 21 and c. 22 (effective March 22, 1999). On December 9, 1999, she filed a complaint against the alleged tortfeasor, Freddie Foster, seeking damages for pain and suffering allegedly sustained in the accident. Foster's answer, which in relevant part merely asserted a blanket exemption from liability on the basis of the New Jersey Automobile Reparation Reform Act, was filed on March 8, 2000. Although plaintiff was subject to AICRA's limitation on lawsuit *365 provisions (previously denominated the verbal threshold), she failed to comply with the physician certification requirements of N.J.S.A. 39:6A-8a, imposed on those subject to the statute's lawsuit limitations, until July 27, 2001, approximately sixteen months after defendant's answer was filed and more than two years after the motor vehicle accident had occurred.
AICRA requires, within sixty days of the filing of defendant's answer, that a plaintiff subject to its lawsuit limitation provisions provide the defendant with a physician's certification attesting to the fact that the plaintiff's injuries meet threshold statutory requirements. Only one sixty-day extension of the deadline is statutorily permitted, and then only for good cause. Therefore, at least by July 6, 2000, a date relatively early in the discovery period, defendant had legal and factual grounds to seek dismissal of plaintiff's suit. However, defendant did not move promptly. Rather, he deferred his motion for more than a year to August 14, 2001, after interrogatories had been answered, documents had been produced, plaintiff had given her deposition and submitted to an independent medical examination, an arbitration had occurred, and of even greater significance, the statute of limitations on plaintiff's claim had run. See N.J.S.A. 2A:14-2. The trial court granted defendant's motion, and, drawing upon precedent construing the affidavit of merit requirement applicable to professional negligence actions,[1] she dismissed plaintiff's claim with prejudice. See N.J.S.A. 2A:53A-29.
On appeal, plaintiff argued in her initial brief that the court's determination should be reversed as the result of her substantial compliance with statutory directives, or that a dismissal without prejudice should have been entered with sanctions imposed upon restoration in a manner similar to the treatment of defaults in discovery under Rule 4:23-5.
N.J.S.A. 39:6A-8a, which replaced New Jersey's prior verbal threshold, now provides that a person subject to the statute's limitation on lawsuit provisions can recover noneconomic damages only upon proof that the injuries sustained have resulted in
death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.
The statute also contains a physician certification requirement, which provides:
In order to satisfy the tort option provisions of this subsection, the plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described above. The certification shall be based on and *366 refer to objective clinical evidence, which may include medical testing, except that any such testing shall be performed in accordance with medical protocols pursuant to subsection a. of section 4 of [N.J.S.A. 39:6A-4] and the use of valid diagnostic tests administered in accordance with [ N.J.S.A. 39:6A-4.7]. Such testing may not be experimental in nature or dependent entirely upon subjective patient response. The court may grant no more than one additional period not to exceed 60 days to file the certification pursuant to this subsection upon a finding of good cause.
A person is guilty of a crime of the fourth degree if that person purposefully or knowingly makes, or causes to be made, a false, fictitious, fraudulent, or misleading statement of material fact in, or omits a material fact from, or causes a material fact to be omitted from, any certification filed pursuant to this subsection....
The statute provides further that fraudulent filing of a certification is grounds for imprisonment and license revocation. Ibid. "The certification is intended as an anti-fraud measure to assure legitimacy; it is necessary to state a claim, not sufficient to establish one...." Conditional veto message of Governor Christine Todd Whitman (April 27, 1998).
We have recently held that, in contrast to the affidavit of merit statute, N.J.S.A. 2A:53A-27 to -29, which makes the affidavit an element essential to the establishment of a cause of action for professional negligence, AICRA's certification requirement "is procedural in nature" and is "related to the sufficiency of the pleadings, i.e. the statement of the claim." Watts v. Camaligan, 344 N.J.Super. 453, 467, 782 A.2d 479 (App.Div.2001). It "is not intended to go to the establishment of a cause of action." Ibid. For that reason, in instances in which defendant seeks dismissal because the certification requirement has not been or cannot be timely met, the proper disposition is a dismissal without prejudice. Id. at 468, 782 A.2d 479.
The trial court did not have the benefit of Watts when it reached its determination to dismiss plaintiff's claim with prejudice, a result that we now find to have been in error. However, a transformation of the dismissal to one without prejudice offers plaintiff no particular benefit in this case because any reinstitution of suit is barred by the statute of limitations.
Plaintiff seeks to avoid this result by arguing that she substantially complied with the statute's requirements as the result of her timely service, within one month of the filing of defendant's answer, of a report by her treating chiropractor that established permanency and service of that chiropractor's certification, containing essentially the same information, fifteen months later on July 27, 2001. Plaintiff also notes service on March 8, 2001 of a report by her treating physician that also established permanency. We disagree. See e.g. Bernstein v. Board of Trust. Teachers' Pen. & Ann. Fund, 151 N.J.Super. 71, 76-77, 376 A.2d 563 (App.Div.1977) (enumerating considerations guiding application of equitable doctrine of substantial compliance); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 239, 708 A.2d 401 (1998) (applying Bernstein's criteria).
The purpose of the certification requirement is not merely to acquaint the defense with the nature and severity of plaintiff's alleged injuries. As previously stated, the existence and content of a certification provides the legal foundation for a charge of perjury, should false-swearing be shown, and thus it is a crucial element in the statute's acknowledged goal of fraud *367 prevention. The purpose of the statute and its enforcement mechanism would be entirely undercut if service of a mere report were deemed the substantial equivalent of service of a certification. In Bernstein we required that a party seeking the protections of the doctrine of substantial compliance demonstrate among other things "a general compliance with the purpose of the statute." Id. 151 N.J.Super. at 77, 376 A.2d 563. That showing cannot be made by plaintiff here, and that deficiency is fatal to her argument.
Further, we find that late service of the certification was ineffective as a cure for plaintiff's statutory noncompliance. AICRA's time limitations provide a means for timely termination of non-meritorious suits, thereby permitting the elimination of unnecessary defense costs. We decline to interfere with that goal and, in any event, are bound by the statute's plain meaning.
Plaintiff, alternatively, seeks a dismissal without prejudice, with potential imposition of sanctions when suit is reinstituted. We envisioned this course of action in Watts when we referred
to the Civil Practice Committee the question of whether a specific court rule should be proposed and recommended to the Supreme Court which would require a plaintiff, who files a subsequent complaint with a compliant certification, to nevertheless pay sanctions sufficient to reimburse the defendant for expenses incurred in defending a prior lawsuit dismissed without prejudice for failure to comply with the physician certification requirement of N.J.S.A. 39:6A-8a.
[344 N.J.Super. at 468, 782 A.2d 479.]
However, as we observed previously, this salutary procedure is of no benefit to this plaintiff since her action is now time-barred.
Following review of the parties' initial briefs, we requested that each file an additional brief "addressing the question whether the doctrine of equitable estoppel forecloses defendant from asserting application of the notice requirement under AICRA."
In her supplemental brief, plaintiff sought to draw an analogy between defendant's conduct here and the failure of public entities to assert the defense of noncompliance with the notice requirements of the Tort Claims Act, N.J.S.A. 59:8-3 to -11, and instead to continue with discovery, thereby creating the objective impression that notice had been waived and lulling plaintiffs into inaction until a time after such notice could properly be filed. See, e.g., Hill v. Middletown Bd. of Ed., 183 N.J.Super. 36, 40-42, 443 A.2d 225 (App. Div.), certif. denied, 91 N.J. 233, 450 A.2d 556 (1982). In response, defendant argued that because plaintiff had not asserted the equitable defense of estoppel at the trial level, there was no factual record upon which its applicability could be determined. Additionally, defendant distinguished our decision in Hill as premised upon defendant's failure to specifically raise in its answer the known defense of noncompliance with statutory notice provisions and upon evidence of lengthy and costly discovery, including a motion to compel more specific answers to interrogatories, undertaken by the plaintiff prior to the time that the defense was asserted. In the present case, defendant argued, the failure to serve a certification did not constitute an affirmative defense that defendant could assert in his answer. Moreover, defendant claimed that the majority of the expenses incurred in discovery were borne by the defense, and defendant stated without accompanying proof that plaintiff's failure to serve her physician's certification was raised at the arbitration held on July 26, 2001. As a final matter, defendant argued that there are facts, not presently before *368 us, that would militate against the application of equitable estoppel in the specific context of this case.
In light of these arguments, we first address the legal issue of the applicability of equitable estoppel to bar dismissal of a personal injury claim as the result of plaintiff's failure to comply with the certification requirements of AICRA when dismissal is sought only after the statute of limitations has run. In Hill, we held that the public entity, which could demonstrate no prejudice from plaintiff's conduct, was estopped from asserting lack of the notice required by the Tort Claims Act when that lack of notice was first meaningfully claimed more than two years after plaintiff's personal injury suit had been instituted and after substantial discovery had been completed. In doing so, we described the operation of the doctrine in the following terms:
Equitable estoppel embodies the doctrine "that one shall not be permitted to repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, has detrimentally relied thereon." Anske v. Palisades Park, [139 N.J.Super. 342, 348, 354 A.2d 87 (App.Div.1976).]
... Estoppel is conduct, either express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. Such estoppel is grounded not on subjective intent but rather on the objective impression created by the actor's conduct.
[Hill, supra, 183 N.J.Super. at 41, 443 A.2d 225 (quoting Dambro v. Union Cty. Pk. Comm'n, 130 N.J.Super. 450, 457, 327 A.2d 466 (Law Div.1974) (citations omitted)).]
As defendant noted, the Tort Claims Act conditions suit upon filing of notice in the manner specified in the Act, and provides that "[n]o action shall be brought against a public entity ... unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. Thus, failure to comply with the Act's notice provisions constitutes an affirmative defense to a claim, and the failure of a public entity to specifically assert that defense provides a foundation for the application of equitable principles of estoppel. By contrast, AICRA's certification requirement arises only after an answer to plaintiff's complaint has been filed. As a result, noncompliance is not an affirmative defense that, if asserted, can alert a plaintiff such as Konopka to deficiencies in her case and, if not asserted, can provide a basis for the application of an estoppel. That distinction may constitute a factor in a determination of the applicability of equitable estoppel. However, we do not find it to be of such significance as to preclude as a matter of law the exercise of an estoppel in a case in which the defendant had permitted discovery to continue to its completion and only raised the lack of timeliness of plaintiff's service of her physician's certification after the statute of limitations on plaintiff's claim had run. We found similar conduct and the absence of prejudice to constitute a basis for estoppel in Hill, and we see no meaningful distinction here.
We therefore recognize as a matter of law that a claim of equitable estoppel can be raised in circumstances such as those existing in the present case. Cf. also White v. Karlsson, 354 N.J.Super. 284, 806 A.2d 843 (App.Div.2002) (finding a statute of limitations defense to have been waived when it was not meaningfully asserted in defendant's answer and dismissal on that basis was not sought until discovery had *369 been concluded); Williams v. Bell Tel. Labs., Inc., 132 N.J. 109, 623 A.2d 234 (1993) (applying the doctrine of waiver when the defense, contained in defendant's answer, was not reasserted until after the jury had returned its verdict); Zaccardi v. Becker, 88 N.J. 245, 440 A.2d 1329 (1982) (refusing to bar a subsequent action on statute of limitations grounds when defendant had permitted discovery to continue for seventeen months after plaintiff's action had been dismissed for failure to answer interrogatories).
Although we have received no certification or other evidence that would permit us to recognize the factual representations made by defendant in his supplemental brief, we acknowledge his argument that no factual record on the applicability of an estoppel was made at the trial level. As a consequence, we reverse and remand this matter for a hearing on that issue. In doing so, we emphasize that, contrary to defendant's position, plaintiff need not demonstrate intentional conduct by defendant. The applicable standard requires only that plaintiff show conduct on the part of the defendant occurring intentionally or under such circumstances that it is both natural and probable that the conduct would induce inaction, together with reasonable detrimental reliance on plaintiff's part. See, e.g., Hendry v. Hendry, 339 N.J.Super. 326, 336, 771 A.2d 701 (App. Div.2001) (an estoppel does not require evidence of fraudulent intent; if the conduct creates injustice or inequity to the party it was designed to influence, the doctrine is applicable); General Acc. Ins. Co. v. New York Marine & Gen. Ins. Co., 320 N.J.Super. 546, 557, 727 A.2d 1050 (App.Div.1999); Hill, supra, 183 N.J.Super. at 41, 443 A.2d 225.
Reversed and remanded for proceedings in accordance with this opinion.
NOTES
[1] The court discussed Burns v. Belafsky, 166 N.J. 466, 766 A.2d 1095 (2001), which held that a plaintiff seeking a 60-day extension to file an affidavit of merit and demonstrating good cause, need not move for the statutorily-authorized extension within the initial 60-day service period. The court distinguished this case on the ground that plaintiff's service of her physician's certification occurred at a time well beyond any statutorily permitted extensions of time.