815 A.2d 524 (2003)
357 N.J. Super. 398
Jenevieve CASINELLI, Plaintiff-Respondent,
v.
Wilfredo MANGLAPUS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 2002.
Decided February 7, 2003.
*525 Michael C. Trifolis argued the cause for appellant (Litvak, Accardi & Trifolis, attorneys; Mr. Trifolis, of counsel and on the brief).
John N. Giorgi argued the cause for respondent.
Before JUDGES KESTIN, EICHEN and FALL.
The opinion of the court was delivered by FALL, J.A.D.
This appeal concerns one of a number of emerging issues arising from the Legislature's adoption of the Automobile Insurance Cost Reduction Act (AICRA), L. 1998, c. 21, signed into law by Governor Whitman on May 19, 1998, codified in amendments to this State's no fault automobile insurance laws, N.J.S.A. 39:6A-1.1 to -32, and effective for all automobile insurance policies issued on or after March 22, 1999.
We recently outlined the significant changes made to New Jersey's no-fault law as a result of AICRA's enactment, as follows:
Among other things, [AICRA] established new medical protocols, alternative dispute resolution procedures and the Office of Fraud Prosecutor. The new statute also provides for personal injury protection ("PIP") coverage, a "[l]imitation on lawsuit option," N.J.S.A. 39:6A-8(a), and a "[n]o limitation on lawsuit option," N.J.S.A. 39:6A-8(b). As to the former, . . . N.J.S.A. 39:6A-8(a) provides that only those who meet the verbal threshold may sue for non-economic loss, and may do so only when they have "sustained a bodily injury which results in [1] death; [2] dismemberment; [3] significant disfigurement or significant scarring; [4] displaced fractures; [5] loss of a fetus; or [6] a permanent injury within a reasonable degree of medical probability, other than scarring and disfigurement." (emphasis added.) The statute further provides that "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8(a). In order to overcome the "tort option" or threshold, AICRA also requires that:
[T]he plaintiff shall, within 60 days following the date of the answer to the complaint by the defendant, provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician.

[N.J.S.A. 39:6A-8(a).]
The physician certification must "state, under penalty of perjury, that the plaintiff has sustained an injury described" in the statute and must "be based on and refer to objective clinical evidence, which *526 may include medical testing ... performed in accordance with medical protocols." N.J.S.A. 39:6A-8(a). Finally, with respect to the threshold, AICRA provides that:
A person is guilty of a crime of the fourth degree if that person purposefully or knowingly makes, or causes to be made, a false, fictitious, fraudulent, or misleading statement of material fact in, or omits a material fact from, or causes a material fact to be omitted from, any certification filed pursuant to this subsection.
[Rios v. Szivos, 354 N.J.Super. 578, 582-83, 808 A.2d 868 (App.Div.2002)(footnote omitted).]
See also James v. Torres, 354 N.J.Super. 586, 590-96, 808 A.2d 873 (App.Div. 2002). Additionally, the court may grant not more than one additional period not to exceed sixty days to file the physician certification required by N.J.S.A. 39:6A-8(a), upon a finding of good cause.
Here, on leave granted, defendant Wilfredo Manglapus appeals from an order entered on April 5, 2002, denying his motion for summary judgment that had sought dismissal of the automobile personal injury action filed against him by plaintiff, Jenevieve Casinelli, for failure to file a physician certification within the time prescribed by N.J.S.A. 39:6A-8(a), and for failure to meet the verbal threshold requirements of the statute.
The specific issue before this court is whether a complaint must be dismissed with prejudice where a plaintiff has failed to file the required physician certification within the time prescribed by N.J.S.A. 39:6A-8(a), and the two-year statute-of-limitations period set forth in N.J.S.A. 2A:14-2 has run at the time the defendant's motion seeking dismissal is filed.
We hold that, under such circumstances, if a plaintiff in a verbal threshold case is able to establish the requisite elements to demonstrate substantial compliance with the procedural requirement of AICRA that a physician certification be timely filed, then the harsh consequences of a dismissal with prejudice for failure to timely file the required physician certification, after the applicable statute-of-limitations period has run, can be equitably avoided. We reach this conclusion because failure to strictly comply with the time requirements for filing a physician certification does not go to the heart of the cause of action as defined by the Legislature. See Watts v. Camaligan, 344 N.J.Super. 453, 462-68, 782 A.2d 479 (App.Div.2001). The fact that the applicable statute of limitations may have expired at the time defendant moves for dismissal on the grounds that a timely physician certification has not been filed does not preclude a substantial compliance analysis.
Here, plaintiff filed two untimely physician certifications, ostensibly containing the components required by N.J.S.A. 39:6A-8(a), after the motion for dismissal was made. Additionally, during the course of discovery and prior to expiration of the sixty-day period prescribed by N.J.S.A. 39:6A-8(a) for filing of a physician certification or expiration of the twoyear statute-of-limitations period prescribed by N.J.S.A. 2A:14-2, plaintiff furnished defendant with numerous medical records and reports issued by several physicians documenting plaintiff's injuries, purportedly causally related to the subject automobile accident. These circumstances, and others, require development of a factual record against which can be considered the application of the doctrine of substantial compliance, and we remand *527 the matter to the trial court for that purpose.
The issues presented arise from the following factual and procedural circumstances. On December 27, 1999, plaintiff, then age twenty-six, was a passenger in a pick-up truck that was struck from the rear while stopped at a traffic light by a vehicle driven by defendant. Plaintiff was thrown forward, then backwards, striking her head against the back window of the truck.
On the day of the accident plaintiff was examined and treated by Dr. James Garabo, a chiropractor. Due to the severity of her head and cervical pain, plaintiff was transported from Dr. Garabo's office to the emergency room at Rahway Hospital. Plaintiff was examined at the hospital; x-rays of the skull and cervical spine were taken; she was given a cervical collar; was told to take Tylenol or Advil for her pain; was advised to see a neurologist; and then released. The x-rays of the skull were normal, with no evidence of fractures. The cervical x-ray disclosed "[l]oss of normal lordosis with mild kyphosis [backward curvature of the spine] centered on C4-5. Rule out muscular spasm or sprain. No fracture."
On December 29, 1999, plaintiff was examined by Dr. Nazar H. Haidri, a neurologist, who diagnosed plaintiff as having suffered post-concussion syndrome; post-traumatic headaches; acute cervical, dorsal and lumbar sprain; and from symptoms consistent with bilateral lumbar radiculopathy. In his December 29, 1999 report, Dr. Haidri noted plaintiff had been involved in a prior motor vehicle accident on April 4, 1998, which had caused injuries to plaintiff's neck and back. Dr. Haidri determined that plaintiff's 1998 injuries were "markedly aggravated by the accident of December 27, 1999." During his examination of plaintiff Dr. Haidri found limited range of motion in both the cervical and lumbar areas of her spine, as well as spasms "over both cervical para-vertebral muscles."
During plaintiff's course of treatment, Dr. Haidri ordered several MRI studies. An MRI of plaintiff's skull taken on January 10, 2000 disclosed "[n]o evidence of tumor, infarct or subdural hematoma." On February 16, 2000, MRI studies of both plaintiff's lumbosacral and cervical spines were completed. Dr. Howard Kessler, a radiologist, issued two reports dated February 16, 2000. According to Dr. Kessler, the lumbosacral MRI revealed "[n]o evidence of disc herniation, annular bulge or spinal stenosis[;]" the cervical MRI disclosed "[r]eversed cervical lordosis consistent with muscular spasm[,]" and "[d]isc herniation C5-C6, central and left paracentral with sac indentation."
After reviewing the results of the MRI studies, Dr. Haidri referred plaintiff to Dr. Steven L. Nehmer, an orthopedic surgeon, who examined her on May 11, 2000. In his report dated May 16, 2000, Dr. Nehmer recommended that plaintiff undergo either a cervical epidural injection or begin physical therapy. In his report dated September 29, 2000, Dr. Nehmer diagnosed plaintiff as having suffered a cervical disc herniation at C5-C6 and a lumbar strain, both causally related to the December 27, 1999 automobile accident. Dr. Nehmer's prognosis concerning plaintiff's disability from those injuries was "guarded," and he noted that a cervical MRI taken after her 1998 injury had not revealed any disc herniation as a result of the 1998 accident.
On July 17, 2000, plaintiff was examined by Dr. Charles G. Kalko, a neurosurgeon. In his report dated December 8, 2000, Dr. Kalko diagnosed plaintiff as having suffered cervical radiculopathy and cervical deformity at C5-C6. He recommended that plaintiff "start physical therapy and to consider obtaining a cervical CT myelogram and then consider surgical intervention." *528 Dr. Kalko also concluded that plaintiff's injuries were causally related to the December 27, 1999 accident. Dr. Kalko found that plaintiff's "prognosis is guarded pending further diagnostic testing and surgery."
Dr. Haidri also referred plaintiff to Dr. Paul H. Ratzker, a neurosurgeon at the Back Institute, for an evaluation. Plaintiff was first examined by Dr. Ratzker on May 25, 2000. In his report dated July 25, 2000, Dr. Ratzker diagnosed plaintiff as suffering from "left sided C6 cervical radiculopathy secondary to the disc herniation at the C5-6 level." Dr. Ratzker prescribed medication and a course of physiotherapy.
Plaintiff began a three-week course of physical therapy at the Back Institute on July 31, 2000. On August 22, 2000, plaintiff was re-evaluated by Dr. Ratzker. Although she was feeling better, plaintiff reported "occasional spurts of pain[.]" Dr. Ratzker advised plaintiff they could continue with the physical therapy and begin the prescribed medication or try a cervical epidural steroid injection.
Plaintiff elected to continue physical therapy and returned for an examination by Dr. Ratzker on September 14, 2000. Plaintiff reported she was feeling better but was experiencing numbness in a small area in her forearm. Dr. Ratzker found that "[t]he range of motion in her cervical spine with flexion, extension and rotation are markedly increased from her last visit[,]" and "she has an excellent result from conservative treatment of cervical radiculopathy." Dr. Ratzker recommended continued physiotherapy twice each week for a period of six weeks and a reevaluation thereafter.
On July 17, 2001, plaintiff filed a complaint in the Law Division against defendant alleging that as a result of defendant's negligence in the December 27, 1999 accident, she had
sustained injuries causing permanent disability, resulting in death, dismemberment, significant disfigurement or a fracture; permanent loss of body organ, member, function or system; permanent consequential limitation of use of a body organ, or member; or a medically determined injury or impairment of a non-permanent nature which prevented [her] from performing substantially all of the material acts which constitute [][her] usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment,... has been disabled and in the future will be disabled and not able to perform her usual functions, has been caused and in the future will be caused great pain and suffering to her loss and damage.[1]
On October 12, 2001, defendant filed an answer, interposing, inter alia, a separate defense contending plaintiff's action was barred by the provisions of N.J.S.A. 39:6A-8(a). On February 25, 2002, defendant moved for summary judgment, seeking dismissal of plaintiff's complaint on the ground that she had failed to meet the verbal threshold and physician certification *529 requirements contained in N.J.S.A. 39:6A-8(a).
In response, plaintiff submitted a report from Dr. Haidri dated March 5, 2002, attaching Dr. Nehmer's May 16, 2000 report and stating that plaintiff's post-traumatic tinnitus, blurring of vision, chronic cervical, dorsal and lumbar sprain, and the disc herniation at C5-C6 were causally related to the injuries sustained during the December 27, 1999 accident, and that her prior injuries from the 1998 automobile accident had been aggravated by that later accident. In his report, Dr. Haidri stated that future therapy and disc herniation surgery could not be ruled out, and that the injuries are permanent in nature.
Physician certifications executed by Dr. Haidri and Dr. Ratzker, dated March 18, 2002, were also filed in opposition to defendant's motion. Dr. Haidri certified that plaintiff "has sustained a permanent and significant injury" as a result of the December 27, 1999 accident based upon continuing symptoms present for six months after the accident. Dr. Ratzker certified that his prognosis for plaintiff was fair based upon a significant cervical disc herniation and a recent flare-up of symptoms. Dr. Ratzker stated that plaintiff "has suffered a permanent and significant injury as a result of the motor vehicle accident of December 27, 1999[,]" based upon a permanent disruption of her intervertebral disc. In addition to those certifications, plaintiff submitted her own certification in opposition to the summary judgment motion, also dated March 18, 2002, outlining her injuries, her course of treatment, and her thencurrent complaints of pain and physical limitation.
Defendant's motion for summary judgment was argued in the Law Division on April 5, 2002. The motion judge noted the complaint had been filed on July 17, 2001 and, that since the answer had been filed on October 12, 2001, the provisions of N.J.S.A. 39:6A-8(a) required plaintiff to have filed a physician's certification stating she had suffered "a permanent injury within a reasonable degree of medical probability," by December 11, 2001. The judge found that plaintiff had not provided the physician certifications from Dr. Haidri and Dr. Ratzker until March 20, 2002.
Citing to Watts, supra, 344 N.J.Super. at 468, 782 A.2d 479, for the proposition that dismissal of a complaint for failure to provide the required physician's certification within the time prescribed by N.J.S.A. 39:6A-8(a) is to be without prejudice, the motion judge noted that by the time plaintiff had provided the physician certifications the applicable two-year statute-of-limitations period had expired. The judge considered, without deciding, the issue of whether a dismissal without prejudice under these circumstances would time-bar plaintiff's cause of action against defendant because it would necessarily be reinstated or re-filed after expiration of the two-year limitation period, or, whether the reinstatement or re-filing, for statute-of-limitations purposes, would relate back to the original filing date of the complaint.
Commenting that it was "an interesting issue," the motion judge denied defendant's motion for summary judgment, only stating "that the defendant is [the] only one who's going to take the appeal." The judge also declined to make a determination as to whether plaintiff had demonstrated "good cause" for failure to timely provide the physician certifications, or for failure to file a motion to extend the sixty-day time period set forth in N.J.S.A. 39:6A-8(a). The issue of whether plaintiff had satisfied the verbal threshold requirements contained in N.J.S.A. 39:6A-8(a) was not addressed. An order memorializing the decision denying defendant's motion *530 for summary judgment was entered on April 5, 2002.
On appeal, defendant presents the following arguments for our consideration:
POINT I
PLAINTIFF'S COMPLAINT MUST BE DISMISSED WITH PREJUDICE AS PLAINTIFF HAS FAILED TO COMPLY WITH N.J.S.A. 39:6A-8.
POINT II
IF PLAINTIFF'S COMPLAINT IS DISMISSED WITHOUT PREJUDICE, THE REFILING OF THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS.
As the trial court correctly concluded, under the applicable provisions of N.J.S.A. 39:6A-8(a), plaintiff was required to file a conforming physician's certification by December 11, 2001. Plaintiff failed to do so; nor did plaintiff seek court permission for an additional sixty-day period within which to file the certification. Defendant filed his motion for summary judgment on February 25, 2002, more than one-hundred-and-twenty days after defendant had filed his answer, and approximately two months after the two-year statute-of-limitations period set forth in N.J.S.A. 2A:14-2 had expired.
Certain facts that bear upon our analysis of the issue in this appeal are not fully clear from the record on appeal. R. 4:17-1(b)(2) provides that a plaintiff in a personal injury automobile accident case "shall be deemed to have been served with uniform interrogatories simultaneously with service of defendant's answer to the complaint and shall serve answers to the interrogatories within 30 days after service of the answer to the complaint." Defendant's answer was filed and served on or about October 12, 2001. Accordingly, plaintiff was required by this Rule to serve answers to Uniform Interrogatories, Form A, upon defendant by on or about November 11, 2001. The record on appeal only contains the first page of plaintiff's answers to the Form A interrogatory questions, which provided answers to the first three questions. Plaintiff supplied the following answer to question number three, which required plaintiff to give a "[d]etailed description of nature, extent and duration of all injuries[:]"
As a result of the automobile accident of December 27, 1999, I sustained injuries to my back and neck. My injuries have been diagnosed as post-concussion syndrome, post-traumatic headaches, acute cervical, dorsal and lumbar sprain, symptoms consistent with bilateral lumbar radiculopathy. My injuries have also been diagnosed with reversed cervical lordosis consistent with muscle spasm and disc herniation C5-C6, central and left paracentral with sac indentation. My injuries have been further diagnosed as lumbar strain and left sided C6 cervical radiculopathy secondary to the disc herniation at the C5-C6 level. See copies of report of Dr. Nazar H. Haidri, Ideal Professional Park, Suite C9, 2333 Morris Avenue, Union, New Jersey 07083, attached hereto. See copies of reports of Dr. Howard Kessler, c/o [U]nion Imaging Associates, P.A., 445 Chestnut Street, Union, New Jersey 07083, attached hereto. See copy of report of Dr. Charles S. Kalko, 1833 Oak Tree Road, Edison, New Jersey 08820. See copy of report of Dr. Steven L. Nehmer, 2121 Morris Avenue, Union, New Jersey 07083, attached hereto. See copy of reports from Dr. Paul H. Ratzker, The Back Institute, 2333 Morris Avenue, Suite A-14, Union, New Jersey 07083, attached hereto.

[Emphasis added.]
Although the record on appeal does not reflect the date when those interrogatory *531 answers were served upon defendant, there is nothing in the procedural history presented to suggest that plaintiff failed to comply with the time requirement set forth in R. 4:17-1(b)(2). Indeed, all the referenced attached medical reports are dated prior to the date of the filing of the complaint. Accordingly, it appears that prior to expiration of the sixty-day period for serving of the physician certification required by N.J.S.A. 39:6A-8(a), plaintiff had provided defendant with her entire course of medical evaluation and treatment, including several reports causally linking the cervical disc herniation to the December 27, 1999 accident. Additionally, at some point prior to filing the motion for summary judgment, the defense had taken plaintiff's deposition, where, inter alia, the full extent of her injuries was explored.[2]
In addressing the issue of whether a plaintiff's failure to file a timely physician certification pursuant to N.J.S.A. 39:6A-8(a) mandates a dismissal with prejudice, absent a showing of good cause to permit an extension of up to sixty days, we held
that plaintiff's failure to comply with the physician certification requirement of the compulsory no-fault liability insurance provisions of N.J.S.A. 39:6A-8a, under the circumstances of this case, required a dismissal without prejudice and the motion judge's failure to enter such an order was error.
[Watts, supra, 344 N.J.Super. at 456-57, 782 A.2d 479.]
However, we found no reason to "interfere with the motion judge's refusal to enter an order of dismissal without prejudice because entry of such an order, at this stage of the litigation, would serve no legitimate purpose." Id. at 457, 782 A.2d 479.
In Watts, the accident had occurred on February 8, 2000; the complaint had been filed on March 17, 2000; the answer had been filed on April 19, 2000; the motion to dismiss for failure to timely supply a physician's certification had been filed on September 20, 2000; and, on October 6, 2000, a physician's certification had been filed by plaintiff. Ibid. Although "the filing of the certification was 150 days late, the motion judge denied defendants' motion and refused to dismiss plaintiff's complaint." Id. at 458, 782 A.2d 479. Notably, the twoyear statute-of-limitations period set forth in N.J.S.A. 2A:14-2 had not expired at the time the trial court had considered the defendant's motion.
In Watts, we granted the defendant's application for leave to appeal and remanded the matter to the motion judge to determine whether "good cause" had been shown for the filing of the late certification and, if not, whether "a dismissal with prejudice would be the proper remedy." Ibid. On remand, the trial court found that good cause existed and it was appropriate to permit plaintiff to proceed. Id. at 459, 782 A.2d 479.
On appeal from the remand decision, we agreed with the plaintiff's concession that the
failure to request, much less produce, the required physician certification or move for an extension of time to file a physician certification within the second sixty-day statutory period represented a lack of proper diligence, which effectively nullified any justification for a good cause extension, whether based upon extraordinary circumstances or substantial compliance.

*532 [Id. at 461, 782 A.2d 479.]
In Watts, as here, the failure to seek court approval of a second sixty-day period, and the late submission of a physician's certification precludes a finding of "good cause" sufficient to excuse the late filing. Ibid.
However, in addressing the question of the appropriate sanction or remedy for failing to file a timely physician's certification, we noted in Watts that the purpose of the physician certification requirement contained in N.J.S.A. 39:6A-8(a) was to determine whether the plaintiff had medical evidence to establish that the verbal threshold provisions of the statute had been satisfied, and that the failure to comply with the physician-certification requirement does not go to the heart of the cause of action. Id. at 463, 782 A.2d 479. Accordingly, "[w]e conclud[ed] that the failure to comply with the physician certification requirement of [N.J.S.A. 39:6A-8(a) ] was not intended by the Legislature to preclude future suits for legitimate injuries sustained as the result of another's negligence." Id. at 467, 782 A.2d 479. We elaborated, as follows:
Our analysis is consistent with R. 4:6-2(e), Failure to State a Claim, and the holding in Printing Mart[-Morristown] v. Sharp Electronics, 116 N.J. 739, 772, 563 A.2d 31 (1989) that, "barring any other impediment such as a statute of limitations," a dismissal without prejudice should ordinarily be granted in response to a successful motion for failure to state a claim. Here, the impediment to future causes of action created by the Legislature was the revised verbal threshold, not the failure to file a physician certification.

[Ibid. (emphasis added).]
In contrasting the physician certification requirement in AICRA with the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 to -29, we concluded that "the physician certification requirement in AICRA focuses not on the heart of the cause of action, i.e., negligence and injury, but instead is limited to the nature and extent of plaintiff's injuries existing at the time that the certification is authored." Id. at 468, 782 A.2d 479. Accordingly, we ruled that the appropriate remedy for failure to provide a physician certification pursuant to N.J.S.A. 39:6A-8(a) within the one-hundred-and-twenty-day period is a dismissal without prejudice. Ibid.
The issue here is: (1) whether the expiration of the statute-of-limitations period at the time defendant filed his motion for summary judgment, followed by plaintiff's untimely filing of the physician certifications, mandated entry of an order of dismissal with prejudice; or alternatively, (2) whether entry of a dismissal without prejudice would have the effect of precluding reinstatement or refiling of plaintiff's complaint by operation of the two-year statute-of-limitations bar.
We recently considered these questions in Konopka v. Foster, 356 N.J.Super. 223, 812 A.2d 363 (App.Div.2002). There, the motor vehicle accident had occurred on June 28, 1999; the complaint had been filed on December 6, 1999; the answer had been filed on March 8, 2000; and plaintiff had failed to file the physician certification required by N.J.S.A. 39:6A-8(a) until July 27, 2001, approximately one year beyond the aggregate one-hundred-and-twenty-day period permitted by N.J.S.A. 39:6A-8(a), and more than two years after expiration of the statute-of-limitations period contained in N.J.S.A. 2A:14-2. Id. at 225-26, 812 A.2d 363. However, the Konopka court noted that although the defendant had legal and factual grounds to seek dismissal of plaintiff's suit, defendant had
deferred his motion for more than a year to August 14, 2001, after interrogatories had been answered, documents *533 had been produced, plaintiff had given her deposition and submitted to an independent medical examination, an arbitration had occurred, and of even greater significance, the statute of limitations on plaintiff's claim had run. See N.J.S.A. 2A:14-2. The trial court granted defendant's motion, and, drawing upon precedent construing the affidavit of merit requirement applicable to professional negligence actions, she dismissed plaintiff's claim with prejudice. See 2A:53A-29.
[Id. at 226, 812 A.2d 363 (footnote omitted; emphasis added).]
On appeal from the dismissal with prejudice in Konopka, the plaintiff had argued that she had "substantially complied" with the statutory directives contained in AICRA and, alternatively, that the dismissal should have been without prejudice, subject to restoration upon the imposition of sanctions "in a manner similar to the treatment of defaults in discovery under Rule 4:23-5." Id. at 227, 812 A.2d 363. Citing to Watts, supra, 344 N.J.Super. at 467, 782 A.2d 479, the Konopka court stated:
The trial court did not have the benefit of Watts when it reached its determination to dismiss plaintiff's claim with prejudice, a result that we now find to have been in error. However, a transformation of the dismissal to one without prejudice offers plaintiff no particular benefit in this case because any reinstitution of suit is barred by the statute of limitations.
[Konopka, supra, 356 N.J.Super. at 228, 812 A.2d 363.]
In rejecting the plaintiff's contention that the doctrine of substantial compliance should have been invoked to avoid the statute-of-limitations bar, since she had submitted, within one month of the filing of the defendant's answer, "a report by her treating chiropractor that established permanency[,]" ibid., the Konopka court stated, in pertinent part:
The purpose of the certification requirement is not merely to acquaint the defense with the nature and severity of plaintiff's alleged injuries. As previously stated, the existence and content of a certification provides the legal foundation for a charge of perjury, should false-swearing be shown, and thus it is a crucial element in the statute's acknowledged goal of fraud prevention. The purpose of the statute and its enforcement mechanism would be entirely undercut if service of a mere report were deemed the substantial equivalent of service of a certification. In Bernstein [v. Board of Trs. Teachers' Pension & Annuity Fund, 151 N.J.Super. 71, 77, 376 A.2d 563 (App.Div.1977)] we required that a party seeking the protections of the doctrine of substantial compliance demonstrate among other things "a general compliance with the purpose of the statute." . . . That showing cannot be made by plaintiff here, and that deficiency is fatal to her [substantial compliance] argument.
Further, we find that late service of the certification was ineffective as a cure for plaintiff's statutory noncompliance. AICRA's time limitations provide a means for timely termination of nonmeritorious suits, thereby permitting the elimination of unnecessary defense costs. We decline to interfere with that goal and, in any event, are bound by the statute's plain meaning.

[Id. at 229, 812 A.2d 363.]
However, in reversing the trial court's dismissal of the plaintiff's complaint with prejudice, the Konopka court held that, as a matter of law, the doctrine of equitable estoppel may be applicable "to bar dismissal of a personal injury claim as the result of plaintiff's failure to comply with *534 the certification requirements of AICRA when dismissal is sought only after the statute of limitations has run." Id. at 230-31, 232, 812 A.2d 363. The court remanded the matter to the trial court for development of a factual record against which could be measured the applicability of the doctrine of equitable estoppel, noting:
In doing so, we emphasize that, contrary to defendant's position, plaintiff need not demonstrate intentional conduct by defendant. The applicable standard requires only that plaintiff show conduct on the part of the defendant occurring intentionally or under such circumstances that it is both natural and probable that the conduct would induce inaction, together with reasonable detrimental reliance on plaintiff's part.
[Id. at 232, 812 A.2d 363 (citations omitted).]
In the context of a verbal threshold case, the primary distinction we discern between the equitable doctrines of "substantial compliance" and "estoppel" is the focus of the inquiry, the former examining the conduct of the plaintiff, and the latter scrutinizing the conduct of the defendant. We respectfully depart from the conclusion reached by our colleagues in Konopka that the doctrine of substantial compliance cannot be considered when a plaintiff has failed to meet the technical physician-certification time requirements contained in N.J.S.A. 39:6A-8(a).
Although we agree with the Konopka court's conclusion that one of the purposes of the physician-certification requirement is to deter fraudulent claims and to punish those who collude to present a fraudulent personal injury claim, we conclude that the physician-certification requirement was adopted to facilitate the overall, underlying purpose of AICRA to reduce automobile insurance premiums for the consuming public through achievement of a reduction or elimination of those claims that do not meet the threshold requirements established in N.J.S.A. 39:6A-8(a). Stated another way, the physician-certification requirement is one of several means employed by the Legislature to achieve that ultimate end goal. See NJ Coalition of Health Care Prof'ls, Inc. v. DOBI, 323 N.J.Super. 207, 215-20, 732 A.2d 1063 (App.Div.) (tracing history of the New Jersey no-fault laws and noting that "[f]rom the inception of this no-fault scheme, the Legislature intended to eliminate minor personal-injury-automobilenegligence actions from the court system in order to achieve economy and provide lower insurance premiums to the public"), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). The focus of a substantial compliance analysis should be on whether the actions taken by the plaintiff have furthered the overall, underlying legislative purpose in the same or similar manner that the physician certification would have done had it been timely filed.
Moreover, we cannot discern how the statute's purpose to reduce fraudulent claims and to punish those who participate in a fraudulent claim is undercut by application of the doctrine of substantial compliance, since the very application of that doctrine would give recognition to the existence of facts that demonstrate that the claim is, in fact, not fraudulent. That is particularly true where, as here, the plaintiff has submitted physician certifications, albeit late, that essentially memorialize that which had been contained in reports previously submitted to the defendant in a timely fashion. If, indeed, those certifications are later found to be fraudulent, application of the criminal penalties contained in N.J.S.A. 39:6A-8(a) to the authors thereof is not precluded by application of the doctrine of substantial compliance. Additionally, if the physician *535 certifications filed here are deemed insufficient, or if the trial court otherwise concludes that plaintiff has failed to meet the verbal threshold requirements, the trial court may consider dismissal of plaintiff's action on either or both of those grounds. See Ostasz v. Howard, 357 N.J.Super. 65, 67, 813 A.2d 1258 (App.Div.2003) (holding that the requirement of a medical comparative analysis of a plaintiff's pre-existing injuries with the injuries sustained in the subject accident, as contained in Polk v. Daconceicao, 268 N.J.Super. 568, 634 A.2d 135 (App.Div.1993), continues to govern verbal threshold cases under AICRA); Rios, supra, 354 N.J.Super. at 584-85, 808 A.2d 868 (holding that the filing of a complying physician certification does not preclude entry of summary judgment where the court concludes the plaintiff has failed to meet the verbal threshold requirement); James, supra, 354 N.J.Super. at 596, 808 A.2d 873 (holding that the adoption of AICRA did not alter the Oswin v. Shaw, 129 N.J. 290, 318, 609 A.2d 415 (1992) requirement in verbal threshold cases that to survive a defense motion for summary judgment the plaintiff must establish a permanent injury, a serious impact to plaintiff's life, and a causal nexus between the two).
We also add that one of the inherent purposes of AICRA is certainly not to preclude claims that do meet the verbal threshold requirements established in N.J.S.A. 39:6A-8(a). Indeed, the intent of AICRA is to limit automobile negligence personal injury actions to those that meet those threshold requirements.
As the Supreme Court has recently stated, in discussing the purpose of the "substantial compliance" doctrine in the context of failure to file a timely affidavit of merit in a professional malpractice case:
The equitable doctrine of substantial compliance has deep roots in English common law, Neil v. Morgan, 28 Ill. 524, 1862 WL 3359, at *3 (1862)[.] . . .
* * * * * *
Its purpose is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose.... It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims.
* * * * * *
[T]he doctrine has been applied by our courts in a wide array of contexts....
To be sure, not every non-complying act is salvageable under the substantial compliance doctrine. In Bernstein, supra, where the doctrine was invoked by the court in the pension context, its elements were set forth with specificity:
A canvass of the cases dealing with the application of the equitable doctrine of substantial compliance indicate the following considerations: (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute....
[151 N.J.Super. at 76-77, 376 A.2d 563.]
Satisfying those elements guarantees that the underlying purpose of the statute is met and that no prejudice is visited on the opposing party. In each case, the court is required to assess the facts against the clearly defined elements to determine whether technical non-conformity is excusable.
[Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 351-54, 771 A.2d 1141 (2001) (citations omitted).]
*536 We conclude that if a plaintiff in a verbal threshold case can establish the requisite elements demonstrating substantial compliance with the statute's procedural requirement of timely filing a physician certification, then the harsh consequences that would otherwise flow from technical noncompliance with the time requirements for serving the physician certification can be equitably avoided. Here, we raised the issue of substantial compliance at argument; it was not briefed by the parties, nor is the record on appeal adequate to determine whether all prerequisite elements for its application are present. "Indeed, the very notion of substantial compliance requires a fact-sensitive analysis involving the assessment of all of the idiosyncratic details of a case to determine whether `reasonable effectuation of the statute's purpose' has occurred." Galik, supra, 167 N.J. at 356, 771 A.2d 1141 (quoting Cornblatt v. Barow, 153 N.J. 218, 236, 708 A.2d 401 (1998)).
Additionally, we note that the doctrine of substantial compliance can be invoked, under appropriate circumstances, to avoid the harsh application of the statute of limitations, after dismissal without prejudice where the legislative purpose has been fulfilled. See Negron v. Llarena, 156 N.J. 296, 304, 716 A.2d 1158 (1998) (holding that doctrine of substantial compliance may be invoked to avoid the harsh result of statute-of-limitations preclusion in a state court wrongful death action where a prior federal action, though later dismissed, had been filed within the prescribed statute-of-limitations period); Estate of Vida v. City of Garfield, 330 N.J.Super. 225, 230, 749 A.2d 391 (App. Div.2000) (holding that statutes of limitations are designed to encourage the litigation of fresh complaints and to provide a defendant with prompt notice of a claim in order to prepare a defense, and doctrine of substantial compliance may be invoked to demonstrate that those goals have been met). Here, since the physician certification is a procedural requirement, substantial compliance with that requirement in an action timely filed should preclude a dismissal of the action or application of the statute-of-limitations bar.
Accordingly, we affirm the denial of defendant's motion for summary judgment, but remand the matter to the trial court to conduct further proceedings to determine whether the doctrine of substantial compliance may be invoked by plaintiff to prevent dismissal of her complaint for failure to file a timely physician certification. We hasten to add that consideration of the application of the doctrine of equitable estoppel, as recognized by this court in Konopka, is proper under appropriate circumstances, and may also be considered.
We also note that here, as in Watts and Konopka, physician certifications, albeit untimely, were filed with the court. In reaching our conclusion that, under appropriate circumstances, the doctrine of substantial compliance may be invoked to avoid dismissal, we do not suggest that plaintiff can avoid the statutory requirement that a complying physician certification be filed. Indeed, "[t]he Legislature endeavored to reduce litigation and insurance costs by deterring doctors from filing false reports and did so by requiring a certification in a form to permit prosecutions for perjury." Tierra v. Salazar, 356 N.J.Super. 586, 589, 813 A.2d 1208 (App. Div.2002); see also Rios, supra, 354 N.J.Super. at 583, 808 A.2d 868 (noting that under penalty of perjury, the physician certification must state that the plaintiff has sustained an injury that satisfies the verbal threshold). Accordingly, as a prerequisite to consideration of application of the doctrine of substantial compliance in a verbal threshold case, the plaintiff must *537 have filed a physician certification that, except for being untimely filed, otherwise meets the requirements contained in N.J.S.A. 39:6A-8(a).
Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The language in the complaint tracks the verbal threshold language contained in N.J.S.A. 39:6A-8(a) as it existed prior to its amendment by AICRA, which was effective as to all policies of automobile insurance issued after March 22, 1999. Here, the applicable policy was issued on December 21, 1999, making plaintiff's claim subject to the provisions of AICRA, including the new physician's certification requirement. In his brief, plaintiff's counsel advises that it was not until shortly before plaintiff's deposition that counsel became aware that the motor vehicle policy insuring plaintiff had been issued after March 22, 1999.
[2] The date that plaintiff's deposition was taken is not contained in the record on appeal. Accordingly, we cannot determine whether plaintiff's deposition occurred prior to expiration of the sixty-day period, prior to expiration of the aggregate one-hundred-and-twenty day period, or thereafter.